United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| People of the State of California, ex rel., | No. C 07-2055 JSW (JL) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Environmental Protection Agency, et al., | |
| Defendants. | |
| _____/ | |

**Introduction**

The parties' cross-motions for summary judgment were referred by the district court (Hon. Jeffrey S. White), pursuant to 28 U.S.C. §636(b) and Civil Local Rule 72, for proposed findings of fact and recommendations as to whether Defendants properly withheld documents requested by Plaintiffs pursuant to the Freedom of Information Act, 5 U.S.C. §552, *et seq.* The matter was submitted without a hearing pursuant to Civil Local Rule 7-1(b).

**Procedural Background**

On March 28, 2006, the National Highway Transportation Safety Agency ("NHTSA") issued the final rule regarding Average Fuel Economy Standards for Light Trucks; Model Years 2008-2011, published at Federal Register volume 71, page 17566. These rules modify the corporate average fuel economy ("CAFÉ") program for light trucks.

In letters, dated July 18, 2006, (Ex. A to Complaint; "the DOT/OMB FOIA Request"), Plaintiffs requested from Department of Transportation/National Highway Traffic Safety Administration (collectively "DOT/NHTSA"), and Office of Management and Budget ("OMB"), ("the agencies"), the disclosure of records related to (1) "the discussion of state regulations, and/or specifically the State of California's regulation, of, motor vehicle carbon dioxide emissions found in 'Section XIV.D.Preemption,' published in the Federal Register on April 6, 2006, at Volume 71, pages 17654-17670"; (2) certain meetings and phone conversations with NHTSA regarding the above-referenced regulation; and (3) meetings, conferences, and discussions with the President regarding state regulation of motor vehicle carbon dioxide emissions and/or preemption of such regulations." (Complaint at 3, ¶ 9)

In a letter dated July 18, 2006, (Ex. B to Complaint, "the EPA FOIA Request"), Plaintiffs requested from the Environmental Protection Agency ("EPA") "the disclosures of all records . . . related to state regulation of motor vehicle carbon dioxide emissions and/or preemption of such state regulations." (Complaint at 3, ¶10)

The agencies responded by waiving fees, producing some documents, and withholding others, in whole or in part.

In October 2006 Plaintiffs filed a timely administrative appeal, which was denied in November 2006. On April 11, 2007, Plaintiffs filed their complaint for injunctive relief, asking the court to order the agencies to produce all non-privileged documents responsive to Plaintiffs' FOIA request.

### The Documents at Issue in the FOIA Request

Defendants initially withheld documents responsive to FOIA requests by Plaintiffs, either in whole or in part, on the basis of either the attorney-client privilege or the deliberative process privilege, or both. In some instances the documents were withheld even though they contain non-privileged material, on the basis that the non-privileged material is "inextricably intertwined" with privileged material.

Plaintiffs in their reply brief acknowledge that, between the time of the parties' filing of their opposition and their reply briefs to their cross-motions, Defendants released some

documents previously withheld by OMB and DOT/NHTSA. Plaintiffs no longer seek disclosure of any additional documents from EPA.

They continue to seek disclosure of seven documents from OMB and twelve documents from DOT/NHTSA, in their entirety, together with all segregable, non-exempt portions of 41 documents withheld by OMB, and all documents withheld by DOT/NHTSA pursuant to Exemption 5 that are not subject to attorney-client privilege or work product protection. Plaintiffs contend that these documents have been improperly withheld under the Freedom of Information Act, 5 U.S.C. §552, as amended ("FOIA" or "The Act").

Plaintiffs ask the Court to order OMB to produce all segregable non-exempt material contained in Documents 1-8, 10, 14, 16, 18-19, 22, 25-33, 37, 39-41, 49, 51, 62-65, 67, 84-85, 92, 141-142, and 148, and to order DOT/NHTSA to produce all segregable, non-exempt material contained in the documents withheld pursuant to Exemption 5 that are not subject to attorney-client privilege or work product protection.

In their Reply, Defendants agreed to release some documents. Defendant OMB will release, in full, documents 84, 85, and 92 to Plaintiff. Defendant DOT/NHTSA will release documents 1540-46, 1546-48, and 2006. (Supp. Decl. of Kathy Ray, Attachment 3 to Defendants' Reply ISO Mot. Summ Judg.)

**Freedom of Information Act (FOIA) and Exemption 5**

The FOIA mandates that agencies make available for public inspection a broad range of information, including the agency's organization, general methodology, rules of procedure, substantive rules, final opinions, and statements of policy and interpretation that have been adopted by the agency. 5 U.S.C. § 552(a). The FOIA, however, specifically exempts nine categories of documents from its otherwise broad disclosure requirement. 5 U.S.C. § 552(b). Unless documents fall within one of the nine specific exemptions to the disclosure requirement of the FOIA, they are presumed to be available for public inspection. See 5 U.S.C. § 552(c) ("This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section."). FOIA mandates broad disclosure and that the agency bears the burden of

establishing that a particular document is exempt. *Bowen v. FDA,* 925 F.2d 1225, 1226 (9th Cir.1991).

The agencies in this case rely on Exemption 5, which exempts "inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Pursuant to this exemption, the agencies invoke the "deliberative process" privilege, which shields from public disclosure confidential inter-agency memoranda on matters of law or policy. *See also National Wildlife Federation v. U.S. Forest Service,* 861 F.2d 1114, 1116 -1117 (9th Cir.1988)

### Deliberative Process Privilege

The deliberative process privilege has been held to cover all recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency, as well as documents which would inaccurately reflect or prematurely disclose the views of the agency.

To qualify for exemption a document must be both (1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative," meaning "it must actually be related to the process by which policies are formulated." *National Wildlife Federation,* 861 F.2d at 1117 (internal citation omitted). Exemption 5 protects documents that would reveal the process by which agency officials make these determinations, containing non-binding recommendations on law or policy. *National Wildlife Federation,* 861 F.2d at 1117 -1118.

### *Vaughn* Index - Sufficiency of Information

The so-called " *Vaughn* index" dates back to the District of Columbia Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977 (1974). In that case, the court rejected an agency's conclusory affidavit that requested FOIA documents were subject to exemption, and directed the agency to furnish detailed support for its exemption claims by itemizing the refused documents in an index providing justifications for each asserted exemption. *Id.* at 826-28. The indexing requirement articulated in *Vaughn* has been adopted by the U.S. Court of Appeals for the Ninth Circuit. *Bowen,* 925 F.2d at 1227.

A *Vaughn* Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption. See *Bowen v. FDA, Id.* at n. 1 (describing the origins and contents of the so-called "*Vaughn* Index").

The purpose of a *Vaughn* Index is "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir.1991), (quotation omitted), cert. denied, 505 U.S. 1212 (1992).

**OMB Documents**

Plaintiffs contend that OMB failed to provide sufficient facts for the Court to conduct a *de novo* review, as FOIA mandates, of the conclusion that Documents 63, 64, 65, and 67 have been properly withheld under Exemption 5. Plaintiffs ask the Court to find that OMB has failed to meet its burden to prove these documents are exempt from disclosure, and that they must be disclosed in full.

OMB identifies the documents on its *Vaughn* Index and Supplemental *Vaughn* Index. The description below is the more detailed version on the Supplemental Index. (Attachment 1 to Defendants' Reply ISO Mot. For Summ. Judg.)

Document No. 63 (per Pltf reply brief) (from the description this appears to be # 62) - - email dated 3-28-06 - - from Bryan Hannegan, Council on Environmental Quality (CEQ) to Mark Menchik (OMB), Richard Newell (CEA); with cc: Lisa Branch (OMB), Richard Theroux (OMB). "In this one-page e-mail, Dr. Hannegan provides his opinions in response to an email chain between OMB, CEA and CEQ on drafts of the NHTSA light truck CAFÉ rule ("CAFÉ" stands for Corporate Average Fuel Economy). This document contains interagency or intra-agency pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and has been withheld under FOIA Exemption 5, 5 U.S.C. §552(b)(5). The information contained in the email contains factual information which is thoroughly intermingled with the author's deliberative impressions and analysis, thus, the

factual information contained in this communication is not reasonably segregable from the overall deliberative nature of this document."

The Defendants must provide enough facts for the Court to conduct a *de novo* review, as mandated by FOIA, whether these documents have been properly withheld under Exemption 5. Defendants have furnished for each document the author, the recipients, that the documents are emails, and that they include the authors' opinions, thoughts, views or comments on "drafts of the NHTSA light truck CAFÉ rule." The rest of the description of each document is a conclusory opinion by OMB reflecting that the document is subject to the deliberative process privilege. Is this enough?

Defendants contend that as long as the e-mails contain advice, opinions, recommendations and subjective analysis, they may be withheld under Exemption 5. *National Wildlife Federation*, 861 F.2d at 1117. Plaintiffs respond that such a showing does not provide facts sufficient to permit the Court to conduct its *de novo* review. *Van Bourg, Allen, Weinberger & Roger v. NLRB*, 656 F.2d 1356, 1357-1358 (9th Cir. 1981); *Bay Area Lawyers Alliance v. Dept. of State*, 818 F.Supp. 1291, 1300 (N.D.Cal. 1992).

The court in the *National Wildlife Service* case, upon which Defendants rely, had before it the actual documents at issue, the draft forest plans and draft Environmental Impact Statements. There was no issue in that case of whether the government provided enough information for the court to decide whether the documents were privileged in whole or in part, because, on remand by the court of appeals, the trial court reviewed the actual documents, not an index, as in this case.

Where the agency fails to provide sufficiently detailed facts in support of its claim of exemption, a court may order the documents to be submitted for in camera review, to protect the deliberative process privilege, and make a fair and accurate assessment of the validity of the agency's claim of exemption. Although in camera inspection is not required in every case, it is a useful device which can aid the court in its *de novo* review of an agency's decision to resist disclosure. *Ollestad v. Kelley*, 573 F.2d 1109, 1110 (9th Cir.1978)

(remanding case for district court to conduct in camera review, in absence of sufficiently detailed index or affidavits from agency resisting disclosure).

Defendants provided opinions, not facts, in support of their claim of exemption in the descriptions of these documents. Accordingly, Defendants should produce Documents 62, 64, 65, and 67 for in camera review.

## Segregability

Plaintiffs contended in their initial motion that OMB and DOT/NHTSA failed to provide sufficient information for the Court to make document-by-document findings on segregability and whether these defendants have violated FOIA by failing to prove that all segregable non-exempt portions of documents that are otherwise exempt have been released. The documents at issue then were at Page Nos. 415-416; 613-617; 619-625 (and 1351-1357); 725; 1273; 1323-1324; 1414-1415; 1540-1546; 1546-1548; 2006; 2202; and 2210-2211. Some of these documents have since been released by the agencies. (Ray Declaration *infra*).

Plaintiffs argue that Defendants' single, blanket, conclusory statement in a declaration does not provide the Court with the specific facts necessary to make a *de novo* determination, for each withheld document, whether all segregable, non-exempt portions have been released.

Defendants conducted an additional review of these documents and released numerous pages. (Supplemental Declaration of Kathy Ray in Support of Defendants' Cross-Motion for Summary Judgment/Opposition to Plaintiff's Motion for Summary Judgment at 2 et seq.)

Kathy Ray is the Departmental Freedom of Information Act (FOIA) Officer for the Department of Transportation (DOT), as well as the FOIA Officer for the Office of the Secretary of Transportation (OST) within DOT. Subsequent to her previous declaration in this case (dated November 30, 2007), she conducted a segregability review to address Plaintiffs' concerns in their motion filed December 14, 2007. She reviewed a number of documents which were not subject to attorney-client privilege to identify pages containing purely factual material. The agency then released the factual portions of those pages. In

addition, a number of documents were reviewed and released in their entirety. (*Id.*)

This Court finds that the agencies have released significant numbers of documents and portions of documents between the filing of the opposition and reply briefs in the parties' cross-motions and that there appears to be some disconnect between the parties' reply briefs, indicating that additional documents may have been produced. It is unclear to the Court how many documents are currently subject to the issue of segregability of factual portions of withheld documents. Accordingly, the Court recommends that the parties be directed to revisit and re-brief this specific issue, if there are more documents to which it applies.

### DOT/NHTSA Documents

Comparing Plaintiffs' Reply brief with the Ray Declaration, the Court assumes that the DOT/NHTSA documents which remain at issue are at pages 416, 1273, 1323-1324,1351, 1415, 2202, and 2210-2211. These are email messages and handwritten notes, some unidentified, and also some draft documents. Some communications are between agency staff and Walter Kreucher, an outside consultant. The Court addresses the Kreucher documents first.

Defendants argue that Mr. Kreucher was engaged specifically to represent the interests of DOT/NHTA, and not his own interests or the interests of any other client besides DOT/NHTSA. (Declaration of Stephen P. Wood at ¶13, Attachment 3 to Def. Mot. For Summ. Judg. and Supplemental Decl. Of Stephen P. Wood at ¶5, 7) In this capacity, Mr. Kreucher expressed and exchanged expert opinions, ideas, and other comments with DOT/NHTSA personnel, as well as DOT/NHTSA attorneys, regarding the complex interrelated technical, scientific and legal issues related to the final CAFÉ rule, including the preamble discussion of pre-emption. (Wood Supp. Decl. ¶6, 7) Defendants assert that Mr. Kreucher's opinions, ideas, and comments were not shared with anyone outside NHTSA, and were not used by NHTSA in its dealings with the public. (Id. at ¶7) Defendants contend that their description of Mr. Kreucher's communications in the *Vaughn* Index are sufficient to justify withholding them pursuant to Exemption 5.

Plaintiffs argue that communications and work product of an outside consultant are only subject to Exemption 5 in limited circumstances. *Natural Resources Defense Council v. U.S. Dept. of Defense*, 442 F.Supp.2d 857, 866-870 (C.D.Cal. 2006), citing *Dep't. Of Interior v. Klamath Water Users Prot. Ass'n.*, 532 U.S. 1 (2001). Plaintiffs object that Defendants have failed to meet their burden of describing the scope of Mr. Kreucher's work for DOT/NHTSA, in what capacity he acted, whether he was acting solely as an agent for the federal government, whether his work or communications with DOT/NHTSA were shared with others, or in what manner his work was utilized in the deliberative process. *See, e.g. NRDC*, 442 F.Supp.2d at 868-869. Thus, Plaintiffs contend, Page Nos. 613-617, 619-625 (and 1351-1357), 1273, and 1323-1324 must be released in their entirety. Some of these pages have already been released by the agency.

Courts have upheld the application of Exemption 5 to documents generated by or disclosed to non-government parties such as contractors and consultants, generally when such parties were serving as agents of the government agency and were *directly involved in the internal agency decision-making* that FOIA protects. *Natural Resources Defense Council v. U.S. Dept. of Defense* 442 F.Supp.2d 857, 867 (C.D.Cal.,2006) (Emphasis added). Defendants proffer that Mr. Kreucher "expressed and exchanged expert opinions, ideas, and other comments with DOT/NHTSA personnel, as well as DOT/NHTSA attorneys, regarding the complex interrelated technical, scientific and legal issues related to the final CAFÉ rule, including the preamble discussion of preemption." (Wood Supp. Decl. at paragraph 6,7). The Court finds that Defendants sufficiently allege and describe how Mr. Kreucher was directly involved in the internal agency decision-making that FOIA protects. Accordingly, these documents should not be produced.

### Draft Documents

Plaintiffs object that some documents, at pages 415-416, 725, and 1415-1416, involve discussions relating to agency statements to the public (National Public Radio and hearing testimony), rather than pre-decisional deliberations. Defendants respond that this would be true if these were final versions of the documents; however, they are drafts, and Defendants contend that as such, they would "expose to public view the deliberative

process of an agency," and are therefore exempt from disclosure under the FOIA. *National Wildlife Federation*, 861 F.2d at 1119. Defendants argue that the *Vaughn* Index entries describe adequately how the drafts' content is deliberative and pre-decisional.

The Court reviewed the *Vaughn* Index entries and finds that they do state that the documents are "pre-decisional, deliberative communications, the disclosure of which would inhibit the frank and candid exchange of views necessary for effective government decision-making." However, they do not state *how* the documents would expose the deliberative process, as required by the case law and the statute. The court in the *National Wildlife* case, on which Defendants rely, held that the proper focus of the court's analysis is whether the documents were part of the agency's deliberative process. *National Wildlife Federation,* 861 F.2d at 1118. The Court cannot discern this from the index entries, and, like the court in the *National Wildlife* case, finds this category of documents appropriate for in camera review. These documents, to the extent they have not already been produced, should be submitted for in camera review. *See also Ollestad v. Kelley*, 573 F2d at 1110.

**Katz Documents**

The undated unidentified handwritten notes at Bates numbers 2202-2203 and 2210-11 are those of Kenneth Katz, as attested by Mr. Katz himself (Attachment 3 to Def. Reply ISO Mot. For Summ. Judg., Katz Supp. Decl. At ¶3, 4). Mr. Katz is the Lead Engineer for the CAFÉ program at DOT/NHTSA. He previously provided a declaration in support of Defendants' Cross-Motion for Summary Judgment/Opposition to Pltf. Motion for Summ. Judg. He supplements his previous declaration by identifying himself as the author of documents at Bates numbers 2202-2203 and 2210-11 that DOT is withholding in response to Plaintiffs' July 18, 2006 FOIA request. He attests that their descriptions in the *Vaughn* Index are accurate. All the documents are handwritten notes of telephone conversations during the rule-making process associated with the Model Year ("MY") 2008-11 light truck CAFÉ Rule.

No. 2202 is a handwritten note that he prepared during a telephone conversation with Nissan officials sometime in late 2005 or early 2006. It reflects his selection of certain

key Nissan product plan information that was conveyed to him during this telephone conversation.

No. 2203 (not expressly discussed in Plaintiffs' motion for summary judgment or in its Reply ISO motion) is a handwritten note that he prepared during a meeting with Daimler Chrysler officials on or about January 17, 2006. It reflects his "selection of certain key Daimler Chrysler product plan and technology information" that was conveyed to him during the meeting.

No. 2210 is a handwritten note that he prepared during a conversation with Jerry Plante at Subaru sometime in late 2005 or early 2006. To the best of his recollection, this information was conveyed to him during a telephone conversation, but may have been conveyed by Jerry Plante during a brief visit sometime in late 2005 or early 2006. Either way, it reflects his "selection of certain key Subaru product plan information" that was conveyed to him during this conversation.

No. 2211 consists of handwritten notes that contain two items: (a) notes he prepared during a telephone conversation with John German of Honda sometime in late 2005 or early 2006; and (b) notes he prepared that assisted his analysis of key product plan information for Hyundai and Mitsubishi light trucks, which he prepared on or about the same time as his conversation with Mr. German. It reflects his "selection of certain key Honda product plan information" that was conveyed to him during his conversation with Mr. German, as well as notes regarding Hyundai and Mitsubishi product plan information that he selected from previous manufacturer submissions to the agency.

He attests that the information in each of these documents was used by him and by other NHTSA decision makers during the MY 2008-11 light truck CAFÉ rule-making prior to issuance of the final rule. They are typical of the notes he took during conversations with manufacturers during the agency's deliberations during the rule-making process. They reflect his "selection of certain information required during the MY 2008-11 light truck CAFÉ rulemaking prior to issuance of the final rule". (Katz Decl., Attachment 3 to Defendants' Reply ISO Mot. For Summ. Judg.)

Plaintiffs had objected to the withholding of Mr. Katz's notes on the basis that the author and recipients were not identified in the *Vaughn* Index and thus the documents could not be protected under Exemption 5. Presumably, Mr. Katz's supplemental declaration has cured this defect. If there is an additional objection, Plaintiffs may brief the issue further in light of Mr. Katz's declaration.

Preliminarily, the Court finds that the information in the notes may be subject to the deliberative process privilege, as it consists of handwritten notes and is pre-decisional. *Lahr v. National Transp. Safety Bd.*, 453 F.Supp.2d 1153, 1188 (C.D.Cal. 2006). However, it is Defendants' burden to show that the notes were not predominantly factual in nature, and that what has been withheld "represent[ed] the mental processes of the agency in considering alternative courses of action prior to settling on a final plan." *Lahr*, 453 F.Supp.2d at 1187, citing *Nat'l Wildlife Fed'n*, 861 F.2d at 1122. However, the fact that Mr. Katz selected specific facts to include in his notes may or may not render the notes subject to exemption under the deliberative process privilege. A report does not become part of the deliberative process simply because it contains only those facts which the person making the report thinks material. Only where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are "inextricably intertwined" with "policy-making processes," would the document be exempt from disclosure. *National Wildlife Federation*, 861 F.2d at 1119.

## Conclusion and Recommendation

This Court concludes that some documents were properly withheld and should not be produced, and that some documents should be submitted for in camera review. The Court recommends that the parties be invited to re-brief the issue of segregability, to the extent that there are documents still at issue that the draft documents be submitted for in camera review, and that the parties advise the Court whether Plaintiffs' objections to the non-disclosure of some of Kenneth Katz's notes may have been adequately dealt with by the submission of a supplemental declaration by Mr. Katz, or whether further briefing is in order.

1     Respectfully submitted.

2 DATED: June 4, 2008

_____
JAMES LARSON
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\07-2055\R&R.wpd