United States District Court
For the Northern District of California

1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT
8          NORTHERN DISTRICT OF CALIFORNIA
9
10  People of the State of California, ex rel.,          No. C 07-2055 JSW (JL)
11              Plaintiff,
12      v.                                      **SUPPLEMENTAL REPORT &**
                                                **RECOMMENDATION**
13  Environmental Protection Agency, et al.,
14              Defendants.
    _____/
15
16                      **Background**
17          On April 6, 2006, the National Highway Traffic Safety Administration ("NHTSA")
18  issued its final rule regarding Average Fuel Economy Standards for Light Trucks; Model
19  Years 2008-2011. 71 Fed.Reg. 17566. This rule modifies the corporate average fuel
20  economy ("CAFE") program for light trucks. "Section XIV.D. Pre-emption" of the regulation,
21  as published in the Federal register, at 71 Fed.Reg. 17654 -17670, contains a discussion of
22  the State of California's regulation of motor vehicle carbon dioxide emissions in which
23  NHTSA asserts that state regulation of motor vehicle carbon dioxide emissions is
24  preempted by federal law. Plaintiff contends in its motion for summary judgment that these
25  statements by NHTSA represent a direct attack on California's greenhouse gas regulations,
26  adopted by the California Air Resources Board to implement California law (A.B. 1493),
27  pursuant to California's authority under the Clean Air Act, 42 U.S.C. s7401 *et seq.*, to set
28  emissions standards. The issue whether these regulations are preempted, an issue of great

1  interest to California and the public, is being litigated in *Central Valley Chrysler-Jeep, Inc.*

2  *V. Witherspoon*, Case No. CV-F-04-6663 (E.D.Cal.). This case was stayed, pending the

3  outcome of a case before the U.S. Supreme Court, *Massachusetts v. E.P.A.* 415 F.3d 50

4  (D.C. Cir. 2005), cert. was granted at 548 U.S. 903 (2006).

5      The Supreme Court, Justice Stevens, held that:

6      (1) state of Massachusetts had standing to petition for review;

7      (2) Clean Air Act authorizes the EPA to regulate greenhouse gas emissions from

8      new motor vehicles in the event that it forms a "judgment" that such emissions

9      contribute to climate change; and

10     (3) EPA can avoid taking regulatory action with respect to7 greenhouse gas

11     emissions from new motor vehicles only if it determines that greenhouse gases do

12     not contribute to climate change or if it provides some reasonable explanation as to

13     why it cannot or will not exercise its discretion to determine whether they do.

14     Reversed and remanded.

15  *Massachusetts v. E.P.A.* 127 S.Ct. 1438 (2007)

16     In this lawsuit, Plaintiff seeks injunctive relief from the court, to require Defendants to

17  respond its request under the Freedom of Information Act ("FOIA") 5 U.S.C. § 552(a).

18

19                    **Plaintiff's FOIA Requests**

20     In letters dated July 18, 2006, (Ex. A to Complaint; "the DOT/OMB FOIA Request"),

21  Plaintiff requested from Department of Transportation/National Highway Traffic Safety

22  Administration (collectively "DOT/NHTSA"), and Office of Management and Budget

23  ("OMB"), ("the agencies"), disclosure of records related to (1) "the discussion of state

24  regulations, and/or specifically the State of California's regulation, of, motor vehicle carbon

25  dioxide emissions found in 'Section XIV.D.Preemption,' published in the Federal Register

26  on April 6, 2006, at Volume 71, pages 17654-17670"; (2) certain meetings and phone

27  conversations with NHTSA regarding the above-referenced regulation; and (3) meetings,

28  conferences, and discussions with the President regarding state regulation of motor vehicle

**United States District Court**
For the Northern District of California

1   carbon dioxide emissions and/or preemption of such regulations." (Complaint at 3, ¶ 9)

2       In a letter dated July 18, 2006, (Ex. B to Complaint, "the EPA FOIA Request"),

3   Plaintiff requested from the Environmental Protection Agency ("EPA") "the disclosures of

4   all records . . . related to state regulation of motor vehicle carbon dioxide emissions and/or

5   preemption of such state regulations." (Complaint at 3, ¶10) The agencies responded by

6   waiving fees, producing some documents, and withholding others, in whole or in part.

7       In October 2006 Plaintiff filed a timely administrative appeal, which was denied in

8   November 2006. On April 11, 2007, Plaintiff filed its complaint for injunctive relief, asking

9   the court to order the agencies to produce all non-privileged documents responsive to

10   Plaintiff's FOIA request.

11                           **Referral**

12       The parties' cross-motions for summary judgment were referred by the district court

13   (Hon. Jeffrey S. White), pursuant to 28 U.S.C. §636(b) and Civil Local Rule 72, for

14   proposed findings of fact and recommendations as to whether Defendants properly

15   withheld documents requested by Plaintiff pursuant to the Freedom of Information Act, 5

16   U.S.C. §552, *et seq.*

17            **Procedural Background and Initial Findings**

18       The matter was submitted without a hearing pursuant to Civil Local Rule 7-1(b). This

19   Court issued a Report and Recommendation, e-filed at Docket Number 59.

20       This Court concluded that some documents were properly withheld and should not

21    be produced, specifically those that reflected communications with an outside consultant,

22   Dr. Walter Kreucher (NHTSA Documents 613-617).

23       Defendants in their letter brief (e-filed at Docket # 66) identified documents in

24   addition to NHTSA Documents 613-617, which this Court in its initial R&R found to be

25   exempt from disclosure, also reflecting communications with Dr. Kreucher. Defendants

26   argue that these documents are also exempt from disclosure under exemption 5 of FOIA.

27   These include NHTSA Documents 587-589; 590-591; 596-605; 606; 607-608; 618; 626-

28   627; 848; 849-850; 1260; 1326- 1327; 1337-1339; and 1348. The Court reviewed these

1   documents *in camera* to confirm whether they were subject to exemption 5 and therefore

2   should also not be released.

3        The Court also found in its initial Report and Recommendation that some documents

4   should be submitted for *in camera* review. The Court recommended that the parties be

5   invited to re-brief the issue of segregability; to the extent that there were documents still at

6   issue that the draft documents be submitted for *in camera* review, and that the parties

7   advise the Court whether Plaintiff's' objections to the non-disclosure of some of Kenneth

8   Katz's notes may have been adequately dealt with by the submission of a supplemental

9   declaration by Mr. Katz, or whether further briefing was in order. The parties' objections

10  were due 14 days after entry of the Report and Recommendation. Neither party filed any

11  objections.

12       This Court then received the Supplemental Order of Referral from Judge White:

13       Pursuant to Northern District Civil Local Rule 72-1 and 28 U.S.C. § 636(b)(1)(B), this
        Court issues this supplemental order of referral to Magistrate Judge James Larson
14      to conduct an in camera review of the specified documents and to require further
        briefing referred to in the Report and Recommendation dated June 4, 2008.
15

16  (Docket # 60; Order at 1:19-22)

17       This Court issued its Order at Docket # 61 that the parties brief certain issues and

18  that Defendants produce some documents to the Court for *in camera* review.

19       Plaintiff responded to the Court's Order with a letter brief (e-filed at Docket # 62) to

20  which was attached Exhibit A, the list of documents as to which Plaintiff contends

21  Defendants Office of Management and Budget ("OMB") and National Highway Traffic

22  Safety Administration ("NHTSA") have failed to prove they have produced all segregable,

23  non-exempt portions. There are 168 documents listed in Exhibit A, from one to 30 pages in

24  length.

25       There is also another group of 12 documents Plaintiff contends should be released

26  in full, which documents have not been included in Exhibit A: these are OMB documents

27  63, 64, 65, 67, and DOT/NHTSA documents 415-16, 619-25, 725, 1273, 1323-24, 1414-15,

28  2202, and 2210-11.  The Court's July 24 order requires some of these documents (OMB

1    documents 64, 65, and 67, and DOT/NHTSA documents 415-416 and 725) to be produced

2    for *in camera* review. As to all 12 documents, however, Plaintiff requests that, if the Court

3    does not order them released in full, it should ensure that all segregable, non-exempt

4    portions of the documents are produced.

5        Defendants produced for *in camera* review OMB Documents 62, 64, 65 and 67  and

6    DOT/NHTSA Documents 415-416, 725, 1414-1415 and 1416-1417.  The redacted versions

7    of the documents provided to Plaintiff were provided, along with the unredacted copies.

8    OMB document 67 was withheld in full. Upon further review, defendant DOT/NHTSA

9    discovered that some lines of Document Number 1416-1417 were inadvertently redacted.

10   Document No. 1416-1417 contains the same email strings as Doc. No. 1415-1416.

11   Accordingly, the redactions for Doc. No. 1416-1417 were revised and provided to Plaintiff.

12   Additionally, upon further review, defendant OMB decided, in its discretion, to release, in

13   part, documents 62, 64, and 65.

14       The Court had also ordered the parties to revisit and re-brief the issue of

15   segregability of factual portions of withheld documents, which they did. In the interim, the

16   U.S. Court of Appeals for the Ninth Circuit issued its opinion in the *Pacific Fisheries* case.

17   This opinion does not expressly address the issue of whether an agency must allocate

18   what proportions of a document are factual and deliberative, as discussed in the case of

19   *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

20   However, it does articulate the responsibility of the district court to make specific document-

21   by-document findings whether factual material in a document is reasonably segregable

22   from deliberative material. *Pacific Fisheries, Inc. v. U.S.*, 539 F.3d 1143, 1150 (9th Cir.

23   2008). The Court in *Pacific Fisheries* lays the responsibility on the court to determine

24   whether factual material is reasonably segregable from deliberative material, by reviewing a

25   document *in camera* if the agency affidavits do not adequately verify segregability.

26       This Court subsequently, by Order e-filed at Docket Number 65, directed Defendants

27   also to produce for *in camera* review all documents withheld on the basis of the deliberative

28   process privilege, in case the Court should need to conduct a segregability review,

1   pursuant to the court of appeals decision in *Pacific Fisheries v. United States, Id.* (Factual

2   portions of documents covered by the deliberative process privilege must be segregated

3   and disclosed unless they are "so interwoven with the deliberative material that [they are]

4   not[segregable]. . . . If the government is unable to provide sufficiently specific affidavits,

5   the district court should review the documents *in camera* to determine whether the factual

6   portions were properly segregated and disclosed." *Pacific Fisheries, Inc. v. U.S., Id.*

7   (internal citations and quotations omitted).

8        Defendants produced the OMB documents in hard copy and the NHTSA documents

9   on a CD containing 17 pdf documents, each approximately 60 - 70 pages. The Court

10   several times had to request that NHTSA re-produce documents for which Bates numbers

11   or internal content were illegible. The Defendants on October 30, 2008 for the most part

12   completed their document production in response to the Court's August 26 Order, although

13   some documents were still missing, and others were illegible. The Defendants produced

14   the last batch of documents on November 26, 2008, the day before Thanksgiving, and an

15   additional 4 pages of documents on December 5.

16        For each document at issue, the Court reviewed the *Vaughn* index description, and

17   the affidavit or affidavits justifying withholding of the documents. If the Court could not make

18   specific findings based on the *Vaughn* Index and the affidavits, the Court then reviewed the

19   document *in camera*.

20        The Court had given the parties the option of also addressing in their joint letter brief

21   whether Plaintiff's objections to the non-disclosure of some of Kenneth Katz's notes may

22   have been adequately dealt with by the submission of a supplemental declaration by Mr.

23   Katz, or whether further briefing is necessary. The parties did not brief this issue, so the

24   Court assumes it is moot.

25

26

27

28                                  **Legal Analysis**

United States District Court

For the Northern District of California

1

**FOIA requires disclosure of non-exempt documents**

2      FOIA requires that government agencies disclose to the public any requested

3 documents. 5 U.S.C. § 552(a). The agency may avoid disclosure only if it proves that the

4 documents fall within one of nine enumerated exemptions. 5 U.S.C. § 552(b)(1)-(9). FOIA's

5 purpose is to encourage disclosure, and to that end, its exemptions are to be interpreted

6 narrowly. *U.S. Dept. of Justice v. Julian*, 486 U.S. 1, 8, (1988); *Department of the Air Force*

7 *v. Rose*, 425 U.S. 352, 360- 61 (1976). The government has the burden to prove that a

8 requested document falls within one of FOIA's exemptions. 5 U.S.C. § 552(a)(3).

9

**Exemption 5, the Deliberative Process Privilege**

10      The FOIA exemption for inter- or intra-agency materials incorporates the deliberative

11 process privilege, sometimes known as the executive privilege, which protects documents

12 that are both pre-decisional and deliberative in nature which are prepared to assist an

13 agency board or official in arriving at a decision. *Renegotiation Bd. v. Grumman Aircraft*

14 *Engineering Corp.*, 421 U.S. 168 (1975); *Dow, Lohnes & Albertson v. Presidential Com'n*

15 *on Broadcasting to Cuba*, 624 F. Supp. 572 (D.D.C. 1984).

16      These documents must be generated as part of a definable decision-making process

17 that results in a final agency decision. *Id.* and must reflect the flow of opinions,

18 recommendations, or advice between policy makers in formulating some type of definitive

19 and conclusive ruling. *Bristol-Meyers Co. v. F. T. C.*, 598 F.2d 18 (D.C. Cir. 1978); *Vaughn*

20 *v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Dow, Lohnes & Albertson*, *Id.*

21      The deliberative process privilege has thus been extended to draft documents,

22 proposals, suggestions, instructions to work deletions and alterations into drafts,

23 instructions to conduct an investigation, documents reflecting personal and advisory

24 opinions, and rejections of recommendations. *Federal Open Market Committee of Federal*

25 *Reserve System v. Merrill*, 443 U.S. 340 (1979). *McClelland v. Andrus*, 606 F.2d 1278

26 (D.C. Cir. 1979); *Ashley v. U.S. Dept. of Labor*, 589 F. Supp. 901 (D.D.C. 1983). In the

27 case at bar, there were a number of documents which the agencies identified as drafts

28

and, where appropriate, this Court found them to be exempt from disclosure.

United States District Court

For the Northern District of California

1   The privilege has also been held to apply to advisory documents that include hand-

2   written notes, *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101 (D.C. Cir.

3   1976), including documents provided by advisory committees to an agency. *Exxon Corp. v.*

4   *Department of Energy*, 585 F. Supp. 690 (D.D.C. 1983) (an agency need not show to what

5   extent draft document differs from final document to obtain deliberative process privilege

6   protection where effect would be to expose what occurred in deliberative process between

7   creation of draft and issuance of final document). *Ashley v. U.S. Dept. of Labor*, 589 F.

8   Supp. 901 (D.D.C. 1983). In the case at bar, there were several documents which

9   contained handwritten notes and the Court considered whether the notes revealed the

10  agencies' deliberative process in evaluating whether they should be exempt from

11  disclosure, as well as whether the selection of facts included in the notes likewise revealed

12  the agency's deliberative process.

13  The exemption does not protect documents that are final agency opinions on a

14  matter, that implement an established policy, or that are post-decisional, or documents that

15  have been accorded authoritative or Presidential weight by the agency, because they

16  cannot impinge on an agency's deliberative processes or its quality of opinions once they

17  are rendered. *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 95

18  S. Ct. 1491, 44 L. Ed. 2d 57 (1975) (Emphasis added). *Powell v. U.S. Dept. of Justice*, 584

19  F. Supp. 1508 (N.D. Cal. 1984). *Afshar v. Department of State*, 702 F.2d 1125 (D.C. Cir.

20  1983); *Bristol-Meyers Co. v. F. T. C.*, 598 F.2d 18 (D.C. Cir. 1978); *Dow, Lohnes &*

21  *Albertson, Id.* Not only are final agency opinions not within the scope of the exemption, but

22  pre-decisional memoranda adopted by the agency in a final opinion or expressly relied

23  upon as an explanation in the agency's dispositional document must also be disclosed.

24  *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). *Bristol-Meyers Co. v. F. T. C.*, 598

25  F.2d 18 (D.C. Cir. 1978); *Bristol-Myers Co. v. F. T. C.*, 424 F.2d 935 (D.C. Cir. 1970). In the

26  case at bar, this Court did not identify any documents which were accorded authoritative or

27  Presidential weight by the agency, or that were relied upon in the final opinion.

28  Factors the courts have considered in determining whether a document is a pre-

decisional draft as opposed to a final agency position include: (1) the decision-making

1  authority or lack thereof of the document's author; (2) the position of the parties to the

2  document in terms of the chain of command; and (3) whether the document is intended as

3  an expression of the individual author's views or as an expression of the agency's official

4  point of view. *Pfeiffer v. C.I.A.*, 721 F. Supp. 337 (D.D.C. 1989); Murphy v. Tennessee

5  Valley Authority, 571 F. Supp. 502 (D.D.C. 1983). See also *Arthur Andersen & Co. v. I. R.*

6  *S.*, 679 F.2d 254 (D.C. Cir. 1982) (agency must present to court function and significance

7  of documents withheld in agency's decision-making process). In the case at bar, the Court

8  reviewed the agencies' affidavits and *Vaughn* Index entries to apply the above factors.

9  Where the affidavits and Index entries failed to provide specific information regarding these

10 factors, the Court reviewed the documents *in camera* to verify whether they confirmed that

11 the documents were deliberative and pre-decisional and otherwise exempt from disclosure.

12       As to the second factor, one court has held that a document will more likely be

13 viewed as pre-decisional if it originates from a subordinate to a superior official, as opposed

14 to a document moving the other direction, which is more likely to contain instructions to

15 staff explaining decisions already made. *Schell v. U.S. Dept. of Health & Human Services*,

16 843 F.2d 933 (6th Cir. 1988). In this case, all the documents which the Court reviewed

17 were either internal communications among officials and staff of the Defendant agencies or

18 communications from a subordinate official to the Secretary of Transportation. There were

19 no communications from the Secretary to subordinates, nor were there any documents

20 stating the official position of the agency or stating the final decision or rule as represented

21 by the agency.

22       Courts generally give considerable deference to an agency's explanation of its

23 decisional processes due to respect for the particular expertise needed to prevent injury to

24 the quality of agency decisions as a whole. *Pfeiffer v. C.I.A.*, 721 F. Supp. 337 (D.D.C.

25 1989). In the case at bar, this Court deferred to the agencies' characterizations of their

26 documents, except where the characterizations were so vague and conclusory as to give

27 the Court insufficient information from which to make a finding. The Court considered the

28 agency affidavits and the *Vaughn* Index entries, and if those failed  the Court reviewed the

documents *in camera* to evaluate whether they were exempt from disclosure under FOIA

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    exemption 5.

2        Under the deliberative process functional test, non-binding recommendations on law

3    or policy are exempt from disclosure. *National Wildlife Federation v. U.S. Forest Service*,

4    861 F.2d 1114 (9th Cir. 1988). In the case at bar, several documents were withheld as

5    attorney-client communications and the Court accepted that characterization by an agency,

6    if it was based on specific information.  *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)

7                    **Pure Facts are not Deliberative**

8        The deliberative process privilege has been held not to include purely factual,

9    scientific, or investigatory reports. *Environmental Protection Agency v. Mink*, 410 U.S. 73

10   (1973)(superseded by statutory amendment on other grounds, as stated in *N.L.R.B. v.*

11   *Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978)).

12       However, factual information contained in a deliberative memorandum that is

13   inseparable or inextricably intertwined with the agency's policy-making processes, including

14   the mental processes of the decision-makers, need not be disclosed. *Environmental*

15   *Protection Agency v. Mink, Id.*; *National Wildlife Federation v. U.S. Forest Service, Id.*

16           **Segregability of Factual from Deliberative Material**

17       The attorney work-product and deliberative process privileges are both rooted in the

18   law of discovery and are designed in part to encourage the author of a document to be

19   candid. See *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864, 867

20   (D.C.Cir.1980). But they differ in important ways, not the least of which is their treatment of

21   factual material within documents. Factual portions of documents covered by the

22   deliberative process privilege must be segregated and disclosed unless they are so

23   interwoven with the deliberative material that they are not segregable.

24

25

26

27       The same is not true for documents withheld pursuant to the attorney work-product

28   privilege. That privilege shields both opinion and factual work product from discovery.

     Therefore, if a document is covered by the attorney work-product privilege, the government

**United States District Court**
For the Northern District of California

need not segregate and disclose its factual contents. *Pacific Fisheries,* 539 F.3d at 1148 (internal quotations and citations omitted).

Plaintiff contends that to meet its burden to prove that there is no reasonably segregable, non-exempt information in a document, the agency must provide reasons to support its conclusion, and specifically "describe what proportion of the information in [the] document is non-exempt and how that material is dispersed throughout the document." *Mead Data Central, Inc. v. United States Dep't of the Air Force, Id.* 566 F.2d at 261*; Natural Res. Def. Council v. U.S. Dept. Of Defense*, 442 F. Supp. 2d. 857 at 872, 874 (C.D.Cal. 2006) (OMB failed to meet its burden regarding segregability because it did not identify the proportion of factual information contained in the portions of documents withheld); see also *Wilkinson v. FBI*, 633 F. Supp. 336, 350 (C.D. Cal. 1986) (agency bears the burden of showing in a non-conclusory affidavit that the information is not reasonably segregable); *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1296 (N.D. Cal. 1992). There is no exception to this requirement for e-mails. See, e.g., *Natural Res. Def. Council*, 442 F. Supp. 2d at 872. Plaintiff argues that case law in this Circuit requires the Court to make a de novo determination, for each withheld document, whether all segregable, non-exempt portions have been released. See *Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir. 1991); cert den. 505 U.S. 1212 (1992) (reversible error for court "to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof").

Defendants argue that it is not required in the Ninth Circuit that FOIA defendants describe the proportion of factual information in a document to meet its burden regarding segregability. See Pl. Opposition/Reply Br. at p. 7-8. The principal case from which Plaintiff quotes, and upon which Plaintiff relies for this proposition, is *Mead Data Central, Inc. v. U.S. Dep't of the Air Force, Id.* In *Mead*, the defendant agency failed to address the issue of segregability in its responses to the plaintiff regarding it's FOIA request, and provided no justification for its segregability claims as they related to withheld documents. *Id.* at 260. In

**United States District Court**
For the Northern District of California

1  response, the court held that the defendant agency, in order to justify its segregability

2  claims, was required to describe the proportion of non-exempt information in each

3  document and the manner in which factual material was dispersed throughout its withheld

4  documents. *Id.* at 261.

5      Defendants ask this Court to find that the instant case is distinguishable from *Mead*,

6  on the basis that, unlike the defendant agency in *Mead*, defendants DOT/NHTSA and OMB

7  have specifically addressed the issue of segregability and have provided justifications for

8  their segregability claims. See Ray Supplemental Declaration (December 28, 2007) at ¶ 6-

9  15; see also OMB Second Revised *Vaughn* Index (entries specifying the basis for

10  withholding factual information for each document); Morrall Declaration (December 21,

11  2007) at ¶ 7-12. As the court noted in *Mead*, the proportionality test it suggested was not an

12  unwavering, bright line rule, but instead was a "potentially useful approach," to be "tried and

13  improved by experience" and used as needed. *Mead*, 566 F.2d at 261. Here, Defendants

14  contend that in light of the information they have provided, such a requirement is

15  unnecessary.

16      Defendants ask this Court to conclude that the instant case is also distinguishable

17  from the second case cited by Plaintiff, *Wilkinson v. FBI*, 633 F. Supp. 336 (C.D. Cal. 1986).

18  In *Wilkinson*, the defendant agency attempted to "completely redact" the overwhelming

19  majority of documents that the defendant agency contended contained non-segregable

20  material. Id. at 350 (emphasis in original). The district court found that the defendant agency

21  failed to provide any useful justifications for its claims of non-segregability. *Id.* Consequently,

22  the court, citing *Mead*, required the defendant agency to describe the proportion of non-

23  exempt information contained in each withheld document. *Id.* As

24  explained above, the factual circumstances in the case cited by Plaintiff are markedly

25  different from those in the present action and thus the W*ilkinson* case is inapposite. See,

26  e.g., OMB Second Revised *Vaughn* Index (entries specifying for each document the basis

27  for withholding factual information); Morrall Declaration (December 21, 2007) at ¶ 7- 12; see

28

1  also Ray Supplemental Declaration (December 28, 2007) at ¶ 6-15 (specifying the basis for

2  each withheld record, on a document-by-document basis).

3      The *Mead* proportionality test is, in any event, not a requirement in this jurisdiction;

4  there are no Ninth Circuit cases that mandate such a requirement. In fact, the opposite is

5  true. All of the Ninth Circuit cases that directly cite *Mead* have declined to adopt such a test

6  and make no mention of a requirement to show proportionality to justify segregability. See,

7  e.g., *Willamette Industries, Inc. v. U.S.*, 689 F.2d 865 (9th Cir. 1982); *National Wildlife*

8  *Federation v. U.S. Forest Service*, 861 F.2d 1114 (9th Cir. 1988); *Weiner v. FBI*, 943 F.2d

9  972 (9th Cir. 1991). Instead, this Circuit requires that a district court make specific findings

10 on the issue of segregability. See *Weiner* at 988; *Church of Scientology v. U.S. Army*, 611

11 F.2d 738, 744 (9th Cir. 1979). In order to make such a finding, a district court must find

12 specific facts which establish: (a) what the withheld documents are; and (b) what information

13 such documents contain. See, e.g., *Bay Area Lawyers Alliance v. Dep't of State*, 818 F.

14 Supp. 1291, 1300 (N.D. Cal. 1992); *Weiner* at 988 (district court may make segregability

15 finding where the relationship between each exemption claim and the contents of the

16 specific document is clear).

17     This Court finds that the recent Ninth Circuit opinion in the *Pacific Fisheries* case is

18 applicable to the case at bar. In that case, the appellate court found that where the agency

19 in its affidavits claims the deliberative process privilege, but does not provide sufficient basis

20 for the court to find that factual material was not reasonably segregable from deliberative

21 material, the court should review documents *in camera* to make a specific finding on

22 segregability for each document. *Pacific Fisheries v. U.S., Id.*

23

24

25     In the case at bar, this Court read both the affidavits and the *Vaughn* Index and then,

26 if neither of these provided a sufficient basis to decide whether factual material was

27 reasonably segregable from deliberative material, the Court reviewed the documents *in*

28 *camera*, before making a specific finding for each document.

**Outside Consultants' Communications May be Exempt**

**United States District Court**
For the Northern District of California

1    The exemption for inter- and intra-agency materials has been extended to include

2    analysis and opinions rendered by outside consultants under contract with an agency even

3    though the exemption on its face protects only memoranda generated by or within an

4    agency. *Canadian Javelin, Ltd. v. Securities and Exchange Commission*, 501 F. Supp. 898

5    (D.D.C. 1980); *Wu v. Keeney*, 384 F. Supp. 1161 (D.D.C. 1974). This is because the

6    government's need for the use of outside consultants in the deliberative process should not

7    be jeopardized by exposing the consultants to harmful publicity. *Canadian Javelin, Ltd. v.*

8    *Securities and Exchange Commission, Id.*; *Wu v. Keeney*, 384 F. Supp. 1161 (D.D.C. 1974).

9    The consultants should be able to give their judgments and opinions just as freely as

10   do agency subordinate employees. *Canadian Javelin, Ltd. v. Securities and Exchange*

11   *Commission, Id.*; *Wu v. Keeney*, *Id.*, but see: *Van Bourg, Allen, Weinberg & Roger v.*

12   *N.L.R.B.*, 751 F.2d 982 (9th Cir. 1985) (documents prepared by private parties without

13   formal relationship with agency not covered by exemption). In the case at bar, there were

14   numerous documents reflecting communications with an outside consultant, Dr. Kreucher.

15   The Court in its initial Report and Recommendation concluded that Defendants provided

16   sufficient information for the Court to make a specific finding that these documents were

17   exempt from disclosure. Defendants identified additional Kreucher documents for which this

18   Court reviewed the *Vaughn* Index and, if necessary, the documents themselves to make

19   findings.

20

21

22

23

24

25                         **Standard of Appellate Review**

26   [i]n reviewing a district court's judgment under the FOIA, we "must determine whether

27   the district judge had an adequate factual basis for his or her decision" and, if so, we "must

28   determine whether the decision below was clearly erroneous." *Church of Scientology v.*

*Department of the Army,* 611 F.2d 738, 742 (9th Cir.1979). *National Wildlife Fed'n v. U.S.*

1   *Forest Service, Id.* (review of summary judgment). See also *Van Bourg, Allen, Weinberg &*

2   *Roger v. NLRB*, 751 F.2d 982, 984 (9th Cir.1985) (on review of summary judgment in a

3   FOIA case, "this court will reverse the district court's findings that a particular document is

4   exempt from mandatory disclosure only if the finding is clearly erroneous").

5       A district court's decision on summary judgment that a given document does or does

6   not fall within one of FOIA's exceptions will not be reversed lightly. Essentially, the motion

7   for summary judgment in the present case hinges on whether disclosure of the requested

8   information would reveal  the agency's decisional process. This is a fact-based inquiry

9   where deference to the district court's findings is appropriate. *Assembly of State of Cal. v.*

10  *U.S. Dept. of Commerce*, 968 F.2d 916, 919 -920 (9th Cir.1992).

<div align="center">

**Kreucher Documents**

</div>

12      In its previous Report and Recommendation (Docket Number 59), this Court found:

14      "Defendants proffer that Mr. Kreucher' expressed and exchanged expert opinions,
        ideas, and other comments with DOT/NHTSA personnel, as well as DOT/NHTSA
15      attorneys, regarding the complex interrelated technical, scientific and legal issues
        related to the final CAFE rule, including the preamble discussion of preemption.'
16      (Wood Supp. Decl. At paragraph 6, 7).  The Court finds that Defendants sufficiently
        allege and describe how Mr. Kreucher was directly involved in the internal agency
17      decision-making that FOIA protects.  Accordingly, these documents should not be
        produced." (Order at Docket # 59, at 9:17-23)

19      In their supplemental briefing, Defendants brought to the Court's attention that

20  Plaintiff included in Exhibit A to its supplemental briefing some documents generated by Dr.

21  Kreucher that this Court had previously found to be exempt from disclosure (Document

22  numbers 617-618), and other documents that Plaintiff had never specifically challenged prior

23  to including them in Exhibit A to its supplemental briefing. Defendants argue that these

24  latter documents also fall within the purview of this Court's previous recommendation that

25  they be exempted from disclosure. They are NHTSA documents at Numbers 587-589, 590-

26  591, 596-605, 606, 607-608, 618, 626-627, 848, and 849-850. The Court reviewed the

27  documents *in camera* and made specific findings *infra*, in its discussion of the NHTSA

28  documents.

<div align="center">

**Remaining Documents in Exhibit A**

</div>

<div style="writing-mode: vertical-rl">

**United States District Court**
For the Northern District of California

</div>

1    For each document, this Court reviewed the *Vaughn* Index entries and the supporting

2   affidavits (the Morrall and Neyland Declarations for the OMB documents and the Ray, Wood

3   and Katz Declarations for the DOT/NHTSA documents). If the declarations and the *Vaughn*

4   Index met Defendants' burden to show that a document was exempt from disclosure, the

5   Court made that finding. If not, the Court reviewed the document *in camera* to discern

6   whether or not it was deliberative and pre-decisional and whether factual material was

7   reasonably segregable.

8                                    **OMB Documents**

9                                  **Morrall Declaration**

10

11    John F. Morrall III, PhD., has since 1989 been the Chief of the Health, Transportation

12   and General Government Branch of the Office of Information and Regulatory Affairs (OIRA)

13   of the Office of Management and Budget (OMB), within the Executive Office of the President

14   (EOP). He offers his sworn declaration that he personally reviewed documents and also

15   relied on the declaration of Fumi Y. Griego, PhD., a member of his staff**.** ( Morrall Decl.,

16   Exhibit 5 to Defendants' Reply ISO Motion for Summary Judgment.) Dr. Griego assisted in

17   preparation of the *Vaughn* Index of the responsive documents and portions which were

18   withheld by OMB under FOIA Exemption 5.

19    Dr. Morrall testifies that the withheld documents and portions are pre-decisional

20   communications that consist of internal OMB discussions and interagency discussions

21   involving OMB staff and other Executive Branch staff of an informal interagency working

22   group, in connection with their work on the draft Corporate Average Fuel Economy (CAFE)

23   regulation. Dr. Griego reviewed each document as part of the preparation of the *Vaughn*

24   Index. She states in her declaration that the withheld materials involve Executive Branch

25   deliberations on the CAFE regulation issue. Mr. Neyland explained in his declaration that to

26   the extent that any of the materials include factual information, it is not reasonably

27   segregable from the deliberative information.

28

In the course of Dr. Morrall's page-by-page and line-by-line review, he determined that reasonably segregable factual information has been released wherever possible, unless it was inextricably intertwined with deliberative pre-decisional communications.

He found three categories of documents: (1) internal email communications between OMB officials, consisting of approximately 70 emails, mostly brief one or two-page communications; (2) approximately 74 emails, mostly one or two-pages each, between OMB officials and officials at other EOP agencies or officials at other Executive Branch agencies; and (3) six draft documents, two of which contain handwritten notes of unidentified OMB employees.

Dr. Morrall reviewed the first category, the internal emails, and found they contained deliberative discussions regarding the OMB officials' personal views, comments on policy and legal issues, for example on federal preemption and the draft CAFE Final Rule, and their suggested revisions of the draft CAFE Final Rule.

He also reviewed the second category, of the communications between OMB officials and officials at other Executive Branch agencies, and found that these contained discussions of possible alternatives and options regarding legal and policy issues regarding the draft CAFE Final Rule.

After his review, he testifies that the government has already released reasonably segregable factual portions of the emails and withheld factual information that was inextricably intertwined with deliberative predecisional communications. He contends that the drafting party's selection of which factual materials to include in the document itself reveals the drafter's thoughts as well as the nature of the deliberative communications. In those documents, the drafter's decision to take notes on particular points, or to bring particular points to the attention of the recipient, reflects the author's judgment as to their relative importance and the implicit recommendation that the reader pay particular attention to them. The author's choice of which topics to mention, and how to summarize them, reflects the author's judgment as to the relative significance of the matters under consideration. He concludes that such factual information is not reasonably segregable from

United States District Court
For the Northern District of California

1  the overall deliberative nature of the documents. As a result of his review, however, OMB

2  released in full previously withheld portions of some documents.

3      In some instances, communications include facts and opinions conveyed from a

4  client to an attorney and facts and opinions that would reveal the attorney's

5  recommendations or strategy or the attorney's thought processes in anticipation of litigation.

6  The OMB *Vaughn* Index indicates where the attorney-client privilege or the work product

7  doctrine has been invoked.

8      Dr. Morrall describes the philosophical underpinning of his agency's decision-making

9  process and the likely effect of disclosure on that process. He refers to no specific

10 documents in his declaration, only broad categories. Unfortunately, this does not assist the

11 Court in making a specific determination whether the deliberative process or other privilege

12 shields a specific document from disclosure. Therefore, the Court turns to the declarations

13 of other OMB officials and staff involved with reviewing documents after Plaintiff's FOIA

14 request, to obtain the specific descriptions it needs in order to evaluate the claims of

15 privilege.

16      The Court also reviewed the *Vaughn* Index listings for specific documents and if that

17 also failed to provide an adequate description, the Court then reviewed each document *in

18 camera* for which the agency failed to meet its burden to provide sufficient information for

19 the Court to evaluate the agency's claim of exemption. *Pacific Fisheries v. United States, Id.*

20 (The burden is on the agency to establish that all reasonably segregable portions of a

21 document have been segregated and disclosed. 5 U.S.C. § 552(a)(4)(B), (b). "Courts must

22 apply that burden with an awareness that the plaintiff, who does not have access to the

23 withheld materials, is at a distinct disadvantage in attempting to controvert the agency's

24 claims." The agency can meet its burden by offering an affidavit with reasonably detailed

25 descriptions of the withheld portions of the documents and alleging facts sufficient to

26 establish an exemption. *Pacific Fisheries, Inc. v. U.S., Id.* (internal citations omitted)

27

28                                    **Neyland Declaration**

**United States District Court**
For the Northern District of California

1    Kevin F. Neyland has been employed by OMB since 1982. Since August 2007 he has
2  been Deputy Administrator of the Office of Information and Regulatory Affairs (OIRA). Prior
3  to August 2007 he served as Chief of OMB's Environmental Branch in the Natural
4  Resources Division from 2004. From 2001-2004 he was Acting Chief, and prior to that he
5  was a Senior Program Analyst/Economist between 1994 and 2001. From 1987-1994 he was
6  an Economist in OMB's Natural Resources, Energy and Science Special Studies. From
7  1982 to 1987 he was in OMB's Budget Review Division. He worked for the Department of
8  Commerce from 1976-1979. He bases his testimony on his personal experience, information
9  he obtained in the course of his official duties, and his reliance on information in the
10  November 26, 2007 declaration of Fumie Y. Griego, PhD., a member of his staff at that time.

11    He describes OMB's involvement in the review of the CAFE regulation issued by
12  NHTSA, Plaintiff's FOIA request and administrative appeal, and OMB's responses to the
13  request and the appeal, as well as the reasons for withholding certain documents.

14    Specifically, since OMB is too small to have a designated FOIA officer, regular staff
15  reviewed each document to determine if it was responsive to Plaintiff's request and if it was
16  subject to an exemption under FOIA. OMB located and reviewed a total of 141 documents
17  as potentially responsive to Plaintiff's request. Nineteen of these were released to Plaintiff in
18  whole or in part. One hundred and twenty-two were found by OMB to constitute interagency
19  or intra-agency pre-decisional deliberative communications, disclosure of which would inhibit
20  the frank exchange of views necessary for effective government decision-making. OMB
21  withheld these 122 documents in their entirety under FOIA exemption 5, 5 U.S.C.
22  §552(b)(5).

23

24    After Plaintiff appealed this decision, OMB reviewed the documents again and found:
25  (1) it had inadvertently miscounted and was actually withholding 142 of a total of 163
26  responsive documents in their entirety; (2) it would not release redacted information in ten
27  documents previously released in part, and (3) OMB would release an additional two
28  responsive documents in their entirety. OMB reaffirmed its claim of exemption for the
remaining documents and parts of documents.

**United States District Court**
For the Northern District of California

1   OMB staff assisted in preparing a *Vaughn* Index of withheld documents and portions

2   of documents. Dr. Griego personally reviewed each document in the *Vaughn* Index in the

3   preparation of her declaration.

4   Mr. Neyland personally examined the documents listed in the *Vaughn* Index. They

5   consist of emails or parts of emails among OMB policy officials and staff, as well as staff of

6   other federal agencies, and also OMB staff's handwritten notes that summarize, provide and

7   describe the staff's views on meetings and other communications with Federal officials. He

8   describes these as typical of discussions and briefings between OMB policy officials and

9   their staffs and policy officials and staff at other federal agencies. Their disclosure would

10  inhibit the frank exchange of information which is essential to the decision-making process.

11  Officials rely on staff to gather information to brief decision-makers on what they have

12  learned and what course of action they recommend. The staff's discussion, advice, and

13  recommendations, contained in the withheld materials, are vital to informed decision-

14  making by OMB policy officials, and therefore exempt from disclosure under FOIA

15  Exemption 5. The reason is that their disclosure would reveal OMB's evaluative process and

16  the manner in which relevant opinions and recommendations were formed, as well as

17  revealing the opinions and recommendations themselves. The quality of agency decision-

18  making would suffer from their disclosure. In contrast, OMB has released emails containing

19  factual information and published news media reports relating to the CAFE regulation,

20  unless the factual information was intermingled with the author's impressions or analysis.

21  Neyland reviewed the documents for segregability and releasability, and determined

22  that reasonably segregable factual information had been released wherever possible,

23  unless it was inextricably intertwined with deliberative predecisional communications. These

24  communications included: (1) facts and opinions conveyed from a client to an attorney; (2)

25  facts and opinions that would reveal the attorney's recommendations or strategy or the

26  attorney's thought processes in anticipation of litigation, or (3) the drafter's selection of

27  factual materials to include in the document which would indicate the nature of the

28  deliberative communication. He concluded that the recitation of specific facts in these

documents itself reflects the subjective judgment of the document's author as to which facts

1  are significant enough to warrant mention. The author's choice of which facts or topics to

2  mention, and how to summarize them, reflects the author's judgment as to their relative

3  significance in connection with the government's decision making. Consequently, he

4  contends that the factual information is not reasonably segregable from the overall

5  deliberative nature of the documents.

6       Mr. Neyland expresses his deep concern, derived from his 25 years' experience with

7  OMB, that the effectiveness of Executive Branch deliberations would be compromised if

8  officials and employees could not explore issues thoroughly and present their views,

9  concerns, and recommendations candidly, whether in emails, drafts, analyses, views or

10  recommendations which are all kept confidential. If such materials were publicly released he

11  believes it would reveal not only the manner in which relevant opinions and

12  recommendations were formed, but also the specific individuals who offered these opinions

13  and recommendations. He believes that officials and staff would be less candid if they

14  anticipated subsequent revelation of their comments, criticisms, drafts, and analyses. The

15  anticipation of disclosure of their deliberations would impair the free exchange of information

16  and ideas and the quality of Executive Branch decision making would suffer.

17       As with Dr. Morrall, Mr. Neyland articulates his concerns and broad statements

18  regarding categories of documents, but offers no description of specific documents which

19  would assist this Court in making the kind of determination which the law requires to decide

20  whether a document is exempt from disclosure. Accordingly, the Court moved on to Dr.

21  Griego's declaration and then to the *Vaughn* Index, and if that also fails, *in camera* review.

22

23                                  **Griego Declaration**

24       Dr. Griego, in her short declaration, reiterates Dr. Morrall's concerns, but does not

25  discuss any specific document or group of documents.

26

27                          **OMB Documents:  *Vaughn* Index**

28       The Court reviewed the *Vaughn* Index for OMB Documents listed in Exhibit A to

Plaintiff's letter brief at 1-8, 10, 14, 16, 18, 19, 22, 25-33, 37, 39-41, 49, 51, 57, 62, 67, 141,

**United States District Court**
For the Northern District of California

142, and 148. (OMB 2nd Revised *Vaughn* Index at Ex. 1 to Defendants' Reply ISO Mot. For Summ. Judg.). The Court considered whether Defendants met their burden to show that each communication should not be released, pursuant to exemption 5 of FOIA. The Court considered who sent and received each communication, whether they were agency staff or ultimate decision makers; whether the communication was pre-decisional, that is, sent and received before the final decision was made; and whether the communication was deliberative, that is whether it would tend to reveal the agency's decision making process.

**Documents in Dispute (Plaintiff's Exhibit A)**

**OMB Documents**

***In Camera* Review**

For each of the documents at issue, the Court read the *Vaughn* Index entry and, if necessary, reviewed the document *in camera*. In the *Vaughn* Index entries the agency generally asserts that disclosure would inhibit the frank and candid exchange of views that is necessary for effective government decision-making, and it has been withheld under FOIA exemption 5, 5 U.S.C. §552(b)(5). The agency also asserts that each document contains facts and deliberative opinions which are intertwined to the extent that disclosure would reveal government employees' opinions and recommendations. Therefore, factual material is not reasonably segregable. The Court finds that, except where it expressly find otherwise, all documents are deliberative and pre-decisional and are exempt from disclosure pursuant to exemption 5 of FOIA.

**Document 1** - an email dated 9/22/04 between OMB staff, contains opinions regarding CAA [Clean Air Act] and pre-emption. The Index entry offers the agency's conclusion that the communication is pre-decisional and deliberative and that factual information contained in the document is not reasonably segregable due to its being inextricably intertwined with deliberative materials and that its disclosure would reveal aspects of OMB's evaluative process and the manner in which relevant opinions and recommendations were formed. The Court reviewed the document *in camera* and concludes that the factual information is reasonably segregable and should therefore be released.

United States District Court

For the Northern District of California

**Document 2** - An email dated 4/1/05 between OMB staff containing an excerpt from an internal draft EPA report which discusses EPA's opinions as to future actions. Again, the agency states its conclusion that this is a pre-decisional deliberative communication whose disclosure would inhibit frank and candid exchange of views necessary for effective government decision-making and that factual material is not reasonably segregable. The Court finds that the communicators are OMB staff, and that the presence of the draft EPA internal report discussing opinions as to future actions renders the document deliberative and that the time frame (April 1, 2005, when the proposed final rule was issued in April 2006) renders it pre-decisional. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 3** - An email dated 4/1/05 from Dr. Theroux rendering thoughts and opinions on document # 2 - this document is for the same reasons as # 2 exempt from disclosure.

**Document 4** - An email dated 5/19/05 between OMB staff containing Dr. Graham's thoughts concerning an internal memorandum on the NHTSA light truck CAFE rule. The agency contends that factual material is not reasonably segregable. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 5** - An email dated 5/19/05 in which Mr. Knuffman, an OMB staffer, forwards, with his comments, an email chain between OMB and DPC (presumably the Domestic Policy Council), regarding an internal discussion of an internal memorandum on the DOT regulation and pre-emption. The agency asserts that the email also contains factual material which is inextricably intertwined with deliberative opinions. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 6** - An email dated 5/19/05 in which Dr. Toy, an OMB staffer, provides his thoughts and opinions in response to document #4. The agency asserts that factual material is inextricably intertwined with deliberative opinions. The Court reviewed the document *in*

*camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 7** - An email dated 5/20/05 in which Ms. Branch provides her thoughts in response to Dr. Theroux's response to document # 5. The agency also asserts that factual material is inextricably intertwined with deliberative materials. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 8** - An email dated 7/19/05 in which Mr. Woods, an attorney with NHTSA Office of General Counsel, forwards to Richard Theroux of OMB, with his comments, an email previously sent to OMB containing a draft of the NHTSA light truck CAFE rule. The agency asserts that facts in this communication are intertwined with deliberative opinions. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 10** - In an email dated 8/22/05 Mr. Toy of OMB provides to three OMB staffers his personal views in response to Document # 9. The agency asserts that a small portion of factual information is intermingled with the authors's deliberative impressions and analysis. The Court reviewed the document *in camera*  and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 25** - In an email chain dated 3/17/06, Dr. Arbuckle and Dr. Theroux of OMB discuss their opinions on the implications of the NRC report referenced in Document # 22. The agency asserts that the small portion of factual information is thoroughly intermingled with the author's deliberative impressions and analysis, and is therefore not reasonably segregable from the overall deliberative nature of this document. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 26** - In an email dated 3/17/06, Dr. Theroux of OMB provides to Dr. Arbuckle of OMB his impressions and thoughts in response to Document # 25. The agency asserts that the document contains facts and deliberative opinions which are intertwined to the extent that disclosure would reveal government employees' opinions and

1    recommendations. The Court reviewed the document *in camera* and concludes that it

2    contains no reasonably segregable factual material and is exempt from disclosure.

3        **Document 27** - In an email dated 3/17/06 Dr. Arbuckle of OMB provides to Dr.

4    Theroux of OMB his thoughts in response to Document # 26. The agency asserts that

5    factually information is so inextricably intertwined with deliberative materials that it is not

6    reasonably segregable.  The Court reviewed the document *in camera* and concludes that it

7    contains no reasonably segregable factual material and is exempt from disclosure.

8        **Document 28** - In an email dated 3/17/06, Dr. Theroux responds to Dr. Arbuckle with

9    comments on Document # 27. The agency asserts that the document contains a small

10   portion of factual information which is thoroughly intermingled with the author's deliberative

11   impressions and analysis, and thus is not reasonably segregable. The Court reviewed the

12   document *in camera* and concludes that it contains no reasonably segregable factual

13   material and is exempt from disclosure.

14       **Document 29** - In an email dated 3/17/06, Dr. Arbuckle responds to Dr. Theroux with

15   comments in response to Document # 28. The Court reviewed the document *in camera* and

16   concludes that it contains no reasonably segregable factual material and is exempt from

17   disclosure.

18       **Document 30** - In an email dated 3/22/06 Dr. Theroux provides to three OMB staff

19   his thoughts regarding an internal memorandum on NHTSA light truck CAFE rule. The

20   agency asserts that factual information is inextricably intertwined with deliberative opinions

21   to the extent that disclosure would reveal government employees' opinions and

22   recommendations. The Court finds the document to be deliberative and pre-decisional. The

23   Court reviewed the document *in camera* and concludes that it contains no reasonably

24   segregable factual material and is exempt from disclosure.

25       **Document 31** - In an email dated 3/22/06 Dr. Morrall of OMB provides his personal

26   observations in response to Document # 30. The agency asserts that the document contains

27   facts and deliberative opinions. The Court reviewed the document *in camera* and concludes

28   that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 32** - In an email dated 3/22/06, Lisa Branch of OMB provides comments and forwards to other OMB staff the internal memo referenced in Document 31. The agency asserts that the email contains both facts and deliberative communications. The Court reviewed the document *in camera* and concludes that it does not contain reasonably segregable factual material and is exempt from disclosure.

**Document 33** - In an email dated 3/23/06, Mary Anne Calamas of OMB distributes to OMB officials the internal memorandum referenced in # 31. The agency asserts that the documents contains interagency or intra-agency pre-decisional deliberative communications. The Court reviewed the document *in camera* and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure.

**Document 37** - In an email dated 3/24/06, Lisa Branch of OMB provides to Richard Theroux of OMB her thoughts in response to Document # 36. The agency asserts that this email contains pre-decisional deliberative communications. The Court reviewed the document *in camera* and concludes that it contains no reasonably segregable factual material and is exempt from disclosure.

**Document 39** - In this email dated 3/27/06, Dr. Mark Menchik provides his views in response to issues identified in an email chain on the status of revisions to the NHTSA light truck CAFE rule. The agency asserts that this document contains interagency or intra-agency predecisional deliberative communications and that facts and deliberative opinions are intertwined. The Court reviewed the document *in camera* and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure.

**Document 40** - In an email dated 3/27/06 Lisa Branch of OMB provides to Theroux and Menchik of OMB her thoughts in response to Document # 39. The Court reviewed the document and concludes that it contains factual material which is not reasonably segregable and is exempt from disclosure.

**Document 41 -** In the *Vaughn* Index, the agency states that in this email, dated 3/27/06, John Knepper, an attorney with OMB Office of General Counsel, provides to EPA and OMB staff his perspectives and opinions in response to an inquiry from EPA regarding

the status of revisions to the NHTSA light truck CAFE rule and provides a copy for EPA review. The Court reviewed the document and concludes that it does not contain either deliberative or factual material and is merely a transmittal, and therefore not exempt from disclosure.

**Document 49** - In this email, dated 3/27/06, Lisa Branch of OMB provides to Menchik and Theroux of OMB her comments and forwards an email from DOT regarding plans for implementation of the NHTSA light truck CAFE rule. The Court reviewed the document and concludes that it contains factual material which is not reasonably segregable and is exempt from disclosure.

**Document 51** - In this email dated 3/28/06, Dr. Theroux of OMB provides to Lisa Branch of OMB his comments in response to Document # 49. The Court reviewed the document and concludes that it contains factual material which is not reasonably segregable and is exempt from disclosure.

**Document 57** - In this email dated 3/28/06, Dr. Menchik of OMB provides to Branch and Theroux of OMB his views in response to Document # 49. The Court reviewed the document and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure.

**Document 62** - In this email dated 3/28/06, Bryan Hannegan of Council on Environmental Quality (CEQ) provides to Menchik, Branch, and Theroux of OMB and Richard Newell of Council of Economic Advisors (CEA) his opinions in response to an email exchange between OMB, CEA, and CEQ on drafts of the NHTSA light truck CAFE rule. The Court reviewed this document and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure. The document was released in part.

**Document 67** - In this email dated 3/28/06 Dr. Theroux of OMB provides to Menchik of OMB his comments in response to Document # 59. The Court reviewed the document and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure.

**Document 141** - This undated internal two-page document discusses key aspects of a draft of the light truck CAFE final rule, including the pre-emption analysis. The Court

**United States District Court**

For the Northern District of California

reviewed the document and concludes that it contains no factual information which is reasonably segregable and is exempt from disclosure.

**Document 142** - This undated, two-page document discusses key aspects of a draft of the light truck CAFE final rule, including the pre-emption analysis. The Court reviewed the document and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure.

**Document 148** - In this email dated 3/30/06, Mark Menchik of OMB provides to Dr. Arbuckle of OMB his personal observations and comments on the proposed draft CAFE Final Rule. The Court reviewed the document and concludes that it contains no factual material which is reasonably segregable and is exempt from disclosure. The *Vaughn* Index states that the document was released in part with portions redacted but the copy provided to the Court did not show the redactions. The Court obtained copies which showed the redacted sections in brackets, as well as the redacted version and the completely clean version. After reviewing the document, the Court concludes that it is pre-decisional, deliberative, and contains no factual material which is reasonably segregable.

<div align="center">

**DOT/NHTSA Documents**

**Ray Declaration**

</div>

Kathy Ray is the Departmental Freedom of Information Act (FOIA) Officer for the Department of Transportation (DOT), as well as the FOIA Officer for the Office of the Secretary of Transportation (OST) within DOT. This is the first declaration which the Court actually finds helpful in evaluating the agency's claims of exemption.

Subsequent to her previous declaration in this case (dated November 30, 2007), she conducted a segregability review to address Plaintiff's concerns in their motion filed December 14, 2007. She reviewed a number of documents which were not subject to attorney-client privilege to identify pages containing purely factual material. The agency then released the factual portions of those pages. In addition, a number of documents were reviewed and released in their entirety.

**United States District Court**
For the Northern District of California

1   Ray reviewed a number of documents which she concluded contained facts that were

2   inextricably intertwined with deliberative material. She also found instances where selection

3   of particular facts for inclusion in the document would reveal the pre-decisional deliberations

4   of the agency. She gives specifics for several categories of documents:

5   (1) **Pages 2016-2021** are a Memorandum dated 6/7/05 to the Secretary of

6   Transportation from the NHTSA Administrator Jeffrey Runge, subject: "Recommendations

7   for Light Truck CAFE Standards for Model Years 2008-2011." The agency asserts that the

8   facts selected for inclusion in the briefing reveal the pre-decisional deliberations of the

9   agency and are intertwined with the opinions and recommendations presented in the

10  memorandum. The Court finds that the affidavit alone provides insufficient information to

11  permit the Court to make a specific finding regarding exemption. Therefore, the Court

12  reviewed the *Vaughn* Index.

13  The *Vaughn* Index entry makes the same assertions as the affidavit, and that its

14  disclosure would inhibit the frank and candid exchange of views necessary for effective

15  government decision-making, without any specifics. Accordingly, the Court reviewed the

16  document *in camera* to determine whether it is exempt from disclosure and whether factual

17  material is reasonably segregable. The Court's review reveals that the document contains

18  opinions and options on the proposed fuel economy standards, including evaluations of

19  technical data and the effects of different regulatory options, and that is deliberative and pre-

20  decisional. The Court also finds that the deliberative and factual material are so intermixed

21  that they are not reasonably segregable. This document is therefore exempt from

22  disclosure.

23  (2) **Pages 1585-1588; 1589-1603; 1605-1613; 1916-1960; (duplicates at pages**

24  **2052-2096); 1961-1984; 1990-2000; and 2026-2044** are briefing slides, in which Ray

25  contends that facts are consistently intertwined with the agency's deliberative process

26  throughout the documents. Defendants released the cover sheets (1585, 1589, 1916, 1961,

27  1990, 2026, and 2052) in their entirety. The audience for all the briefings was internal to

28  NHTSA and DOT and not shared outside the federal government. She describes the

briefings individually:

**United States District Court**
For the Northern District of California

1    (A) **1585-1588** - "MY (Model Year) 2011 Reformed CAFE with and without Medium

2  Duty Passenger Vehicles." Data on pages 1586, 1587, and 1588 are derived from

3  information provided by the manufacturers, combined with preliminary assumptions by

4  NHTSA. Ray asserts that the data itself reflects the pre-decisional deliberative thinking of

5  NHTSA and is therefore inextricably intertwined with the deliberative process. This Court

6  finds that the factual and deliberative material are not reasonably segregable and the

7  document is exempt from disclosure.

8    (B) **1589-1603** - "CAFE Final Rule: Light Truck Reform Models Years 2008-2011."

9  This briefing provides a selected summary, assessment, and strategies related to the CAFE

10  Final Rule. Approximately 5 of its 15 pages contain factual data. Ray contends that the

11  factual data is intertwined with the thoughts, assumptions, and recommendations provided

12  in the briefing. She asserts also that the selection of particular factual data for inclusion in

13  the briefing could reveal the deliberative thought process of the agency. This Court finds

14

15  that the majority of the document is purely deliberative and that it is exempt from disclosure.

16    (C) **1605-1613** - "Increased Stringency of Final CAFE Standards." Approximately 6 of

17  the 10 pages contain factual data. The data in this internal NHTSA briefing addresses

18  various stringency proposals. One of the pages that includes factual data also discusses

19  NHTSA projections for the application of various technologies. The data and its arrangement

20  show the deliberations and thoughts of agency officials and staff. Ray contends that it is

21  therefore inextricably intertwined with the agency's deliberative process. This Court finds

22  Defendant has provided sufficient information to establish that at least half of the pages are

23  purely deliberative, but not how the factual material is not reasonably segregable. The Court

24  reviewed the document *in camera* to determine whether the factual material is reasonably

25  segregable. The Court finds that the factual material consists of charts, graphs and

26  comparisons in which the manner in which the factual material is presented would reveal the

27  agency's decision-making process. The document is therefore deliberative, pre-decisional

28  and the factual material is not reasonably segregable from deliberative content.

United States District Court

For the Northern District of California

(D) **1916-1960 and 2052-2096** (duplicate document) - "Light Truck CAFE Standards for MYs 2008-2010." These are identical copies of an internal NHTSA/DOT 45-page briefing. Approximately 19 of the 45 pages contain factual data. However, this data includes assumptions and analysis by NHTSA staff, based on information provided by manufacturers. The data and the majority of the remainder of the briefing describe and interpret preliminary analysis performed by NHTSA staff, and is therefore inextricably intertwined with the agency's deliberative process. This Court finds that the majority of the material is deliberative and the documents are exempt from disclosure.

(E) **1961-1984** - "Developments in CAFE Reform, Progress Briefing - April 29." - Defendants released the last page. Approximately one-fifth of the remaining pages (1961-1983) contain data. The data, as well as the majority of the briefing, reflect assumptions, summaries, opinions, and analysis by NHTSA staff, and are therefore inextricably intertwined with the agency's deliberative process. This Court finds that Defendant provides adequate specific information to establish that the documents are at least four-fifths purely deliberative material, that factual material is not reasonably segregable, and that the document is therefore exempt from disclosure.

(F) **1990-2000** - "CAFE Reform ANPRM [Annual Notice of Proposed Rule Making]: Briefing for the Secretary; November 20, 2003." This is an internal status and proposed "next steps" briefing prepared by NHTSA for the Secretary of Transportation regarding the CAFE Reform ANPRM . There are several facts interspersed within the summary, analysis, and recommendations. Ray concludes that the data is not reasonably segregable. Further, the selection of which facts to include in the briefing reveal the agency's deliberative process. This Court finds that Defendant provides sufficient specific reasons why the documents are exempt from disclosure and the data is not reasonably segregable.

(G) **2026-2044** - "Status of CAFE Activities; National Highway Traffic Safety Administration; June 8, 2005." This briefing contains data on approximately half of its pages which was derived from information provided by manufacturers, combined with preliminary assumptions made by NHTSA staff. The data is in draft, deliberative version containing several proposals and recommendations for changes to the document. The data is

intertwined with the agency's deliberative process and was therefore withheld in its entirety. This Court finds that the agency provided an adequate description which justifies its claim of exemption as deliberative predecisional documents which are exempt from disclosure.

(H) **0269-0275** - Draft memorandum, prepared by Steve Wood, NHTSA attorney, analyzing federal pre-emption of California's greenhouse gas emissions regulation. Ray, in her previous declaration of November 30, 2007, included these pages among those for which the agency was no longer asserting the attorney-client privilege. In fact, these were prepared by counsel for the purpose of giving legal advice and therefore the agency asserts the attorney-client privilege, as it did in the October 10, 2007 *Vaughn* Index, Consequently, Ray contends that these documents are not subject to a segregability review. The Court finds this assertion to be correct. *Mead Data Central*, 566 F.2d at 262. These documents are therefore exempt from disclosure.

**Katz Declaration**

Mr. Katz in his December 27, 2007 declaration verified that he was the author of certain documents which this Court considered in its previous Report and Recommendation, NHTSA Document Numbers 2202-2203 and 2210-11 (Exhibit A lists 2203-2204). Preliminarily, the Court found that the information in the notes may be subject to the deliberative process privilege, as handwritten notes which are pre-decisional. *Lahr v. National Transp. Safety Bd.*, 453 F.Supp.2d 1153, 1188 (C.D.Cal. 2006). However, it is Defendants' burden to show that the notes were not predominantly factual in nature, and that what has been withheld "represent[ed] the mental processes of the agency in considering alternative courses of action prior to settling on a final plan." *Lahr*, 453 F.Supp.2d at 1187, citing *Nat'l Wildlife Fed'n*, 861 F.2d at 1122. However, the fact that Mr. Katz selected specific facts to include in his notes may or may not render the notes subject to exemption under the deliberative process privilege. A report does not become part of the deliberative process simply because it contains only those facts which the person making the report thinks material. Only where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are "inextricably

**United States District Court**
For the Northern District of California

1 | intertwined" with "policy-making processes," would the document be exempt from
2 | disclosure. *National Wildlife Federation*, 861 F.2d at 1119.

3 |     Throughout his declaration, Mr. Katz reiterates that his handwritten notes reflect his
4 | selection of information provided to him by such manufacturers as Subaru, Honda, Hyundai,
5 | Mitsubishi, Chrysler, and Nissan. He says that the information was used by him and other
6 | NHTSA decision makers during the MY 2008-2011 light truck CAFE rulemaking prior to
7 | issuance of the final rule. Although he promises earlier in his declaration to explain how
8 | these documents were used during the rulemaking process, he doesn't actually do so in his
9 | declaration.

10 |     The Court finds that Mr. Katz's declaration is inadequate to show how his selection of
11 | facts would expose the deliberative process. The Court accordingly reviewed the *Vaughn*
12 | Index entries and reviewed the documents *in camera* to verify whether Mr. Katz's selection
13 | of facts would expose the deliberative process and render the documents exempt from
14 | disclosure. The *Vaughn* Index entries are conclusory as to the deliberative, pre-decisional
15 | character of the documents. The agency asserts that Document #s 2203 and 2210-2211
16 | contain attorney-client communications. However, the agency does not assert that the
17 | communications are subject to the attorney-client privilege. *U.S. v. Martin, Id*. The agency
18 | also asserts that Document # 2203 contains  personal information which has been withheld
19 | on the basis of personal privacy. The Court affirms the validity of withholding the personal
20 | information (a cell phone number).

21 |     The Court finds that in the *Vaughn* Index the agency offers no specific information to
22 | determine whether the documents are deliberative and pre-decisional, whether any facts or
23 | selection of facts would reveal the agency's deliberative process, or whether factual material
24 | is reasonably segregable. Further, the agency does not assert the attorney-client privilege,
25 | but merely that the documents are attorney-client communications. Accordingly, the Court
26 | reviewed pages 2202-2204 and 2210-2211 *in camera* to answer these questions.

27 | <div align="center">**NHTSA - Katz Documents**</div>

28 |     **2202-2204** - These are handwritten notes, reflecting the author's thought processes
and in some instances (2202) attorney-client communications, and in others (2203) private

United States District Court
For the Northern District of California

1  and irrelevant information such as a personal cell phone number. For all the above reasons

2  the Court finds that this document is subject to exemption 5 of FOIA.

3      **2210-2211** - These are also handwritten notes of Mr. Katz, reflecting his thought

4  processes, and factual information which reveals the deliberative process of the agency,

5  and therefore are subject to exemption 5 of FOIA.

6                                **Wood Declaration**

7      Stephen P. Wood is Assistant Chief Counsel for Vehicle Safety Standards and

8  Harmonization in the Office of the Chief Counsel, National Highway Traffic Safety

9  Administration (NHTSA), within the Department of Transportation (DOT). In his December

10  28, 2007 Declaration (Ex. 2 to Def. Reply ISO Motion for Summary Judgment), he

11  supplements his previous declaration by expanding on the role of NHTSA consultant Walter

12  Kreucher. This Court previously addressed the application of Exemption 5 to documents

13  generated by DOT/NHTSA consultant, Walter Kreucher, and found that certain documents

14  challenged by Plaintiff should not be produced. See June 4, 2008 Report and

15  Recommendation at 8-9. Among the documents identified in this Court's ruling is

16  DOT/NHTSA Document No. 613-17, which Plaintiff has presumably included inadvertently in

17  its chart of documents in dispute.

18      In the June 4, 2008 Report and Recommendation (Docket Number 59), this Court

19  specifically addressed the Kreucher documents that Plaintiff raised in its brief. There are

20  however, according to Defendants, additional Kreucher documents that Plaintiff did not

21  specifically challenge, but to which this Court's finding also applies. The Court previously

22  determined that the "Kreucher's documents" were adequately identified and described and

23  are exempt from disclosure under Exemption 5 of FOIA, the deliberative process privilege.

24                        **Additional NHTSA "Kreucher Documents"**

25      The Court reviewed the *Vaughn* Index entries for the additional NHTSA documents

26  which reflect communications with Dr. Kreucher, and finds that for the most part the agency

27  provides adequate specific information for the Court to conclude that the documents are

28  deliberative and pre-decisional and therefore exempt from disclosure under FOIA exemption

5. In addition, where the agency alleged that some documents contained non-segregable

United States District Court

For the Northern District of California

factual material, the Court reviewed the documents *in camera* to determine whether factual material was reasonably segregable. The Court makes the following specific findings:

**587-589** - This document contains discussion of comments and opinions on technical data, policy alternatives, and different technologies, sufficiently intermixed as to not be reasonably segregable.

**590-591** - This document discusses the relationship of the draft document to other documents and reports and includes questions and comments regarding technical data. Factual material is not reasonablely segregable from deliberative content.

**596-605** - The email and accompanying draft document, show alternative language and analysis of technical and policy issues, sufficiently intermixed that factual material is not reasonably segregable from deliberative content.

**606 -** This one-page email, dated January 5, 2006, from Kreucher to Abraham, Katz, and Hammel-Smith, discusses and provides an interpretation regarding MDVP (medium duty passenger vehicle) and federal pre-emption. The Court finds this document to be pre-decisional and deliberative and contains no reasonably segregable factual material.

**607-608** - These emails describe the relationship between technical issues and the draft proposals with other reports and analysis of proposed alternative regulations. Factual and deliberative material are so intermixed that they are not reasonably segregable.

**618 -** This document contains comparisons of stringency standards and mingles technical information with exchange of opinions. The factual and deliberative material are not reasonably segregable.

**626-627** - This document contains several emails with questions for internal discussion and assignments of responsibility, comments on a draft, including technical content mixed with opinions and analysis. The factual material is not reasonably segregable. The material is deliberative and pre-decisional.

**848 -** This 1-page document contains 2 emails, dated March 2nd and 3rd, 2006.The first is from Kreucher to Abraham, with copies to Katz and Hammel-Smith, discussing changes made to the attachment. The second email is from Abraham to Kreucher, providing guidance and suggested content for a draft paper on the combustion process. The Court

United States District Court

For the Northern District of California

1  reviewed the document and concludes that it is deliberative, pre-decisional and contains no

2  reasonably segregable factual material.

3      **849-850** (3RD and 4TH emails only) This document contains discussions of scientific

4  information and its relationship to regulatory alternatives. Factual material is not reasonably

5  segregable.

6      **1260** - This document contains comparisons of stringency standards intermingled

7  with opinions and analysis. Factual material is not reasonably segregable.

8      **1326-1327** - This 2-page document contains 2 email messages dated January 6 and

9  10, 2006. The first is from Green to Hammel-Smith, with copies to Katz and Kreucher,

10  providing comments and suggestions on Kreucher's draft document. The second is from

11  Kreucher to Katz, Hammel-Smith, and Green, explaining further revisions to the pre-emption

12  document. The Court finds this document to be deliberative, pre-decisional and to contain

13  no reasonably segregable factual material.

14      **1328-1336** - This 9-page document is a draft paper entitled, "Technical Issues

15  Related to CAFE Pre-emption." It is also marked "Draft Not for Public Dissimination." [sic]

16  The Court finds that the document is deliberative and pre-decisional and contains no

17  reasonably segregable factual material.

18      **1337-1339** - This 3-page document contains a chain of 7 emails, all dated January 5,

19  2006, between Kreucher, Katz, Abraham, Hammel-Smith, Green, Guerci, and Wood,

20  exchanging revisions and questions on technical data, revisions of the technical discussion,

21  describing a write-up on technical issues related to CAFE pre-emption, and raising and

22  following up on questions. The Court finds this document to be deliberative and pre-

23  decisional and to contain no reasonably segregable factual material.

24      **1348** - This document addresses alternative approaches to technical options, and

25  analysis of policy and scientific issues. Factual material is not reasonably segregable.

26                    **Conclusion regarding Kreucher documents**

27      Accordingly, based on the Court's review of the *Vaughn* Index and the documents

28  themselves, the Court concludes that the above-listed documents are exempt from

disclosure and should not be produced.

**Other NHTSA Documents at Issue**

There were a number of documents listed by Plaintiff which were not addressed directly by any of Defendants' declarations, nor are they so-called "Kreucher documents." The Court presumes that the agency's declarants do not address them because they do not contain factual material where there is an issue as to segregability and therefore there is no need for a segregability review by either the agency or the Court. Accordingly, the Court reviewed the *Vaughn* Index entry for each document to determine whether the agency met its burden of stating a basis for non-disclosure under exemption 5 of FOIA. If not, the Court then reviewed the document *in camera*. Where the Court found factual material in the document, it also made specific findings as to its segregability, or where there was either no factual material or it was not reasonably segregable, the Court made that finding. In some instances, only portions of the document were redacted. In those instances, where the Court refers to "the document," it means the redacted portions of the document, and presumes that the unredacted portions have been released.

The agency withheld a number of purely factual documents or portions of documents on the basis that the fact that they were selected for inclusion in a report or briefing would reveal the deliberative process and therefore the documents or portions of documents are exempt from disclosure. A report does not become part of the deliberative process simply because it contains only those facts which the person making the report thinks material. Only where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are "inextricably intertwined" with "policy-making processes," would the document be exempt from disclosure. *National Wildlife Federation*, 861 F.2d at 1119. The Court reviewed factual materials with this in mind, as well as whether the factual material was reasonably segregable from deliberative material.

The Court makes the following findings with respect to these documents:

**2-3 -** A chain of 3 emails dated 3/27/06 from John G. Knepper of OMB to Steve Wood (NHTSA attorney) - The first email discusses the incorporation of comments into a proposed rule. The second email, from Wood to Douglas Letter, Gregory Katsas, Justin Smith, Robert Loeb, and Robert Kopp, all of DOJ, and Knepper, discussing the comments. The third

1  email, from Letter to Katsas, Smith, Loeb, Kopp, Knepper, and Wood, contains proposed

2  DOJ comments to the proposed rule. The Court finds this document to be pre-decisional

3  and deliberative, subject to exemption 5.

4      **4-6 -** This document is a string of 3 emails, all dated March 27, 2006, between

5  attorneys with OMB, NHTSA, and the Department of Justice, commenting on the CAFE

6  pre-emption proposed rule. The Court finds that the document is deliberative and pre-

7  decisional, and contains no factual material which is reasonably segregable.

8      **7-8 -** This document is a string of 3 emails, also dated March 27, 2006, between the

9  same attorneys as # 4-6, on the same topic. The Court finds that the document is

10  deliberative, pre-decisional and contains no factual material which is reasonably segregable.

11      **9-10 -** This document is an email, also dated March 27, 2006 between attorneys with

12  the Department of Justice, OMB, and NHTSA containing DOJ comments on the proposed

13  rule. The Court finds that the document is deliberative and pre-decisional and contains no

14  reasonably segregable factual material.

15      **17-18 (4th email only);** This is a chain of five email messages, from March 17-22,

16  2006, between Carol Hammel-Smith of NHTSA and Steve Wood, NHTSA attorney. The

17  fourth email discusses the review and distribution of the pre-emption document. This Court

18  finds that all of the emails in the string are deliberative and pre-decisional and contain no

19  reasonably segregable factual material.

20      **23-29 (attachment);** The email dated 3/17/2006, from Jacqueline Glassman of

21  NHTSA to Steve Wood, NHTSA attorney at page 28 was released. The attachment is a 6-

22  page draft entitled "pre-emption Chronology" and is a draft compilation of statements

23  relating to CAFE pre-emption. The document also contains attorney-client communications.

24  The Court finds that the document is deliberative and pre-decisional and contains no

25  reasonably segregable factual material.

26      **284-285 (5th email and attachment only)-** This is a chain of 5 email messages from

27  February 12-15, 2006. The email at issue is from Carol Hammel-Smith of NHTSA to Julie

28  Abraham and Steve Wood, NHTSA attorney. The email transmits a revised discussion

concerning California greenhouse gas program issues. The agency contends the document

1   also contains attorney-client communications. The 5th email is merely a transmittal email,

2   and the Court finds that it does not contain any material which would qualify it for exemption

3   from disclosure pursuant to exemption 5 of FOIA.

4      **286-293 (attachment) -** The attachment is a draft dated February 12, 2006, from

5   Carol Hammel-Smith to Julie Abraham, Director of Fuel Economy, and Steve Wood, Acting

6   Chief Counsel of NHTSA. The draft is an attorney-client communication. The Court finds

7   that it is deliberative and pre-decisional and contains no reasonably segregable factual

8   material.

9      **296-303 (attachment)-** This is an email dated February 15, 2006, from Carol

10  Hammel-Smith to Julie Abraham and Steve Wood (sent on a Sunday), conveying a revised

11  memo on the California Greenhouse Gas Program and pre-emption. The Court finds that

12  the draft document is deliberative and pre-decisional, an attorney-client communication and

13  is deliberative and pre-decisional and contains no reasonably segregable factual material.

14     **394 (3rd and 4th emails only) -** This is a chain of 4 email messages, all dated

15  November 16, 2005. The 3rd email, from Peter Feather to Ronald Medford, Michael

16  Harrington, and Richard Theroux, provides feedback on one of many versions of a slide

17  show. The 4th email is from Medford to Feather, Harrington, and Theroux. The text of that

18  email provides guidance and a proposed draft of briefing materials. The Court finds that the

19  withheld portion of the documents is deliberative and pre-decisional and contains no

20  reasonably segregable factual material.

21     **396 (3rd, 4th and 5th emails only) -** This 1-page document contains a chain of 5 email

22  messages, all dated November 16, 2006. The 3rd email, from Harrington to Feather,

23  Medford, and Theroux, provides instructions and guidance regarding the CAFE pre-emption

24  document. The 4th email, from Feather to Medford, Harrington, and Theroux, provides

25  feedback and one of many versions of a slide show. The 5th email, from Medford to Feather,

26  Harrington, and Theroux provides guidance regarding review of a proposed draft of CAFE

27  pre-emption briefing materials. The Court finds the withheld portion of the document to be

28  deliberative and pre-decisional and to contain no reasonably segregable factual material.

**399 (2nd and 3rd emails only)** - This 1-page document contains a chain of 3 emails, all dated November 16, 2005. The second email is from Feather to Medford, Harrington, and Theroux, providing feedback and one of many versions of a slide show. The third email is from Medford to Feather, Harrington, and Theroux, providing guidance regarding the review of a proposed draft of CAFE pre-emption briefing materials. The Court finds the withheld portion of this document to be deliberative, pre-decisional, and to contain no reasonably segregable factual material.

**400-401 (3rd email only)** - This 2-page document contains a chain of 4 emails, all dated November 16, 2005. The third email is from Feather to Medford, Harrington, and Theroux, providing feedback and one of many versions of a slide show. The Court finds the withheld portion of the document to be deliberative, pre-decisional and to contain no reasonably segregable factual material.

**402-403 (attachment)** - On the first page of this 2-page document are two emails dated November 16, 2005, the first from Medford to Wood and the second from Medford to Feather, Harrington, and Theroux. Both emails were released in their entirety. On the second page is a list of draft bullet points for briefing materials. The Court finds the second page to be deliberative, pre-decisional and to contain no reasonably segregable factual material.

**404-405 (attachment)** - On the first page of this 2-page document are 2 emails, both dated November 16, 2005, the first from Theroux to Wood, and the second from Medford to Feather, Harrington, and Theroux. Both emails were released in their entirety. The 1-page attachment contains draft bullet points for briefing materials. The Court finds the attachment to be deliberative, pre-decisional and to contain no reasonably segregable factual material.

**418-419** - This 2-page document contains a chain of 5 email messages, dated June 9 and 10, 2005. The first is from Abraham to Bowie and suggests a change to proposed CAFE language in a briefing memorandum. The second is from Bowie to Abraham, providing an opinion and highlighting two potential questions. The third is from Abraham to Bowie and is released in its entirety. The fourth is from Abraham to Harrington, with a copy to Steve Kratzke (NHTSA), providing an opinion and suggesting a topic for a briefing memorandum.

United States District Court
For the Northern District of California

The fifth is from Arthur Rypinski (DOT) to Abraham, providing an explanation and proposed CAFE language for a briefing memorandum. The Court finds that the first, second, fourth, and fifth emails are deliberative, pre-decisional, and contain no reasonably segregable factual material.

**432** - This 1-page document is two emails. The first dated February 16, 2006, from Simon to Abraham, provides a tentative explanation and guidance regarding certification data. The second dated February 15, 2006, from Abraham to Simon, requests information and clarification regarding EPA's certification data. The Court finds the documents to be deliberative, pre-decisional and to contain no reasonably segregable factual material.

**433-434** - BOTH PAGES ARE MARKED "PREVIOUSLY RELEASED." This 2-page document contains an email and an attachment. The email, dated February 17, 2006, is from Simon to Abraham, with copies to Dickinson, Burnett, and Alson, providing an explanation of and the basis for the data provided in the attachment and proposed other action items. The 1-page attachment deals with the relationship between HC, CO, Nox and mpg, and contains summary data generated in response to an inter-agency deliberative discussion.

**435-437** - ALL PAGES ARE MARKED "PREVIOUSLY RELEASED." This 3-page document contains an email and an attachment. The email, dated February 21, 2006, from Simon to Abraham, with a copy to Dickinson, transmits the background information in the attachment and discusses related comments. The two-page attachment deals with the relationship between HC, CO, Nox, and mpg and contains summary data generated in response to an inter-agency deliberative discussion.

**438 -** This one-page email, dated 2/22/06, from Karl Simon of EPA to Julie Abraham of NHTSA, contains answers to several fuel specification questions. The Court finds the document to be deliberative and pre-decisional and to contain no reasonably segregable factual material.

**441-442 -** This is a chain of 5 email messages, from February 21 to March 28, 2006, back and forth between Karl Simon of EPA and Julie Abraham of NHTSA. The text of the

United States District Court

For the Northern District of California

first email provides an answer to a question related to EPA's voluntary rulemaking. The second discusses a schedule for contact and contact information. The third provides contact and schedule information. The fourth requests contact information. The fifth describes an effort to contact Abraham. The Court finds that the first email is deliberative and pre-decisional and contains no reasonably segregable factual information. The Court finds that the second through fifth emails contain personal information which is private, irrelevant and should not be released.

**443-445 -** This is a chain of 7 email messages, from February 21 to March 28, 2006, between Karl Simon of EPA and Julie Abraham of NHTSA. The first discusses two options regarding an issue in EPA's voluntary rulemaking. The second requests clarification regarding data in EPA's voluntary rulemaking. The third provides an answer to a question related to EPA's voluntary rulemaking. The fourth requests contact information. The fifth discusses a schedule for contact and contact information. The sixth and seventh were released by the agency. The Court finds that the first, second, and third emails are deliberative and pre-decisional and contain no reasonably segregable factual material. The Court finds that the fourth and fifth emails contain personal information which is private, irrelevant, and should not be released.

**446-447 -** This is a chain of six email messages between Julie Abraham of NHTSA and Karl Simon of EPA. The first requests clarification regarding data in EPA's voluntary rulemaking. The second provides an answer to a question related to EPA's voluntary rulemaking. The third requests contact information. The fourth discusses a schedule for contact and contact information. The fifth and sixth were released by the agency. The Court finds that the first and second emails are deliberative, pre-decisional and contain no reasonably segregable factual material. The third and fourth emails containing personal information which is private, irrelevant, and should not be released.

**448-449 -** This is two email messages, both dated February 17, 2006. The first from Julie Abraham of NHTSA to Karl Simon of EPA, with cc to David Dickinson, Jason Burnett

United States District Court

For the Northern District of California

1  and Jeff Also, all of EPA, requests additional information and clarification regarding a

2  summary of technical data provided to NHTSA by EPA. The second is from Simon to

3  Abraham and provides an explanation of and the basis for summary technical data provided

4  to NHTSA by EPA and proposes additional action items. The Court finds that this document

5  is deliberative and pre-decisional and contains no reasonable segregable factual material.

6      **451-453 -** This is a chain of seven emails, dated from February 21 to March 28, 2006.

7  The first was released by the agency. The second is from Julie Abraham of NHTSA to Karl

8  Simon of EPA (Vaughn Index says Simon Karl), and requests clarification regarding

9  data in EPA's voluntary rulemaking. The third is from Simon to Abraham and provides an

10  answer to a question related to EPA's voluntary rulemaking. The fourth is from Abraham to

11  Simon and requests contact information. The fifth is from Simon to Abraham and discusses

12  a schedule for contact and contact information. The sixth and seventh were released by the

13  agency. The Court finds that the second and third are deliberative and pre-decisional and

14  contain no reasonably segregable factual material. The fourth and fifth contain personal

15  information which is private, irrelevant, and should not be released.

16      **456-458 -** ALL PAGES ARE MARKED "PREVIOUSLY RELEASED."

17      **459-461 (2nd email and attachment);** PAGES 460 AND 461 ARE MARKED

18  "PREVIOUSLY RELEASED." Page 459 is two emails, both dated February 21, 2006. The

19  first, from Abraham to Guerci, Wood, Hammel-Smith, and Green, and was released in its

20  entirety. The second, from Simon to Abraham, with a copy to Dickinson, transmits the

21  background information in the attachment and discusses related comments. The Court finds

22  the second email to be deliberative and pre-decisional and to contain no reasonably

23  segregable factual material.

24      **462 (2nd email only) -** This is a one-page document consisting of two emails, both

25  dated February 22, 2006. The second is from Simon (presumably Karl Simon of EPA) to

26  Abraham, regarding several fuel specification questions. The Court finds that the withheld

27  portion of the document is deliberative and pre-decisional and contains no reasonably

28  segregable factual material.

**463-464 (2nd email only) -** This two-page document contains a string of three emails, dated February 15 and 16, 2006. The second is from Karl Simon of EPA to Julie Abraham of NHTSA, and provides a tentative explanation and guidance regarding certification data. The Court finds the withheld portion of this document to be deliberative and pre-decisional and to contain no reasonably segregable factual material.

**465-466 (attachment) -** BOTH PAGES ARE MARKED "PREVIOUSLY RELEASED"

**467-468 -** BOTH PAGES ARE MARKED "PREVIOUSLY RELEASED"

**469-470 -** This two-page document contains a string of 4 emails, dated February 22, 2006. The first is from Julie Abraham of NHTSA to Kevin Green of VOLPE, discussing options for the format of the technical data. The second is from Steve Wood, NHTSA attorney, to Abraham, providing suggestions for making the data more useful. The third is from Abraham to Green, Carol Hammel-Smith of NHTSA and Lloyd Guerci, NHTSA attorney, discussing EPA data and the status of the NHTSA write-up. The fourth is from Karl Simon of EPA to Abraham, providing answers to fuel specification questions. The Court finds the document to be deliberative and pre-decisional and to contain no reasonably segregable factual material.

**471 -** This one-page document is a string of five emails, dated from February 13 to September 6, 2006. The first was released by the agency. The second is from Abraham to Richard Theroux of NHTSA, discussing coordination with EPA regarding emissions impacts. The third is from Theroux to Abraham, asking two questions regarding NHTSA's coordination with EPA. The fourth is from Carol Hammel-Smith of NHTSA to Abraham, with a copy to Theroux, providing information to be shared with EPA. The fifth is from Don Pickrell of VOLPE to Hammel-Smith and Michael Kido, an NHTSA attorney, with copies to Christopher Calamita, an NHTSA attorney, Theroux, and Feather of NHTSA, discussing proposed drafts regarding emissions impacts and requesting feedback. The Court finds this document to be deliberative and pre-decisional and to contain no reasonably segregable factual material.

**490 (2nd and 3rd emails only)** - This one-page document contains a chain of three emails, all dated March 28, 2006. The second is from Elizabeth Branch (OMB) to

**United States District Court**
For the Northern District of California

Harrington, discussing the time frame regarding a section of talking points on the CAFE final rule. The third from Harrington to Branch, discusses talking points on the draft CAFE final rule and requests comments. The Court finds that these two emails are deliberative, pre-decisional and contain no reasonably segregable factual material.

**494 (4th and 5th emails only)** - This one-page document contains a chain of 5 emails, all dated March 28, 2006.The fourth email is from Elizabeth Branch (OMB) to Harrington, discussing the time frame regarding a section of talking points on the draft CAFE final rule. The fifth email, from Harrington to Branch, discusses talking points on the draft CAFE final rule and requests comments. The Court finds the withheld portion of the document is deliberative, pre-decisional, and contains no reasonably segregable factual material.

**496-511 (3rd email only)** - This 16-page document contains a chain of 3 emails. The third email, dated March 28, 2006, from Brian Turmail (DOT) to Harrington, asks a question regarding transmission of the attachment. The Court finds that the redacted portions are deliberative, and that the document contains no factual material.

**612 (1st email only)** - This 1-page document consists of 2 emails, both dated January 5, 2006. The first email, from Abraham to Hammel-Smith, with copies to Feather, Katz, and Green, provides direction and guidance regarding addressing technical questions on CAFE pre-emption. The Court finds that the document is deliberative and pre-decisional and exempt from disclosure.

**629-630 (1st and 2nd emails only)** - This 2-page document contains a chain of 4 emails. The first email, dated February 2, 2006, from Hammel-Smith to Green, with copies to Katz and Abraham, discusses additional analysis of technical data that is necessary. The second email, also dated February 2, 2006, from Green to Hammel-Smith, with copies to Katz and Abraham, provides requested technical data. The Court finds that the withheld document is deliberative, pre-decisional, and contains no reasonably segregable factual material.

**631-633** - This 3-page document contains a chain of 5 emails and an attachment. The first 4 emails are dated February 7 and the fifth February 6, 2006. The first email is from

United States District Court

For the Northern District of California

Hammel-Smith to Katz and Green, with a copy to Abraham, requesting opinions on a question. The second email, from Thomas Cooper (NHTSA) to Hammel-Smith, transmits a comment.   The third email, from Gregory Magno (NHTSA) to Cooper, with a copy to Abraham, provides an explanation regarding the attached data. The fourth email, from Cooper to Magno, asks a question. The attachment contains handwritten notes and says it was "released in entirety, see Nov., 30, 2007 Ray Decl. Para. # 27) The Court finds the withheld portion of this document to be deliberative, pre-decisional, and to contain no reasonably segregable factual material.

**634** - This 1-page document is an email, dated February 7, 2006, from Hammel-Smith to Austin, with copies to Abraham, Green, and Katz, requesting information related to vehicle sales by state, needed for internal analysis. The Court finds this document to be deliberative, pre-decisional, and to contain no reasonably segregable factual material.

**635-638** - This 4-page document is a chain of 12 emails, the first 11 dated February 7 and the 12th February 6, 2006. The first is from Hammel-Smith to Green, Pickrell, Abraham and Katz, discussing the need for further analysis. The second is from Green to Pickrell, Hammel-Smith, Abraham, and Katz presenting requested technical data. The third is from Pickrell to Green, Hammel-Smith, Abraham, and Katz, with a copy to Rory Austin (NHTSA), providing Pickrell's recollection regarding data reported. The fourth is from Green to Hammel-Smith, Abraham, and Katz, providing requested technical data and a suggested approach for analysis. The fifth is from Hammel-Smith to Abraham, Green, and Katz, providing the author's understanding of the status of a request. The sixth is from Abraham to Green, Hammel-Smith, and Katz, providing direction and asking a staffing-related question. The seventh is from Green to Hammel-Smith and Katz, with a copy to Abraham, discussing the regulation of vehicles produced versus sold by state. The eighth is from Hammel-Smith to Katz and Green, with a copy to Abraham, asking a question regarding the use of production vs. Sales data for analysis. The ninth is from Thomas Cooper (NHTSA) to Hammel-Smith, transmitting a comment. The tenth is from Gregory Magno (NHTSA) to Cooper, with a copy to Abraham, providing an explanation of attached data. The eleventh is from Cooper to Magno and asks a question. The twelfth is from Abraham to Cooper, with a

**United States District Court**
For the Northern District of California

copy to Hammel-Smith, requesting assistance in obtaining technical data regarding car production and sales by state. The Court finds the document to be deliberative, pre-decisional, and to contain no reasonably segregable factual material.

**641 (1ˢᵗ email only)** - This 1-page document contains a chain of 3 emails. The first email, dated February 2, 2006, is from Green to Hammel-Smith, with copies to Katz and Abraham, providing requested technical data. The Court finds the technical data to be purely factual and to be reasonably segregable, and this should be produced.

**642-644** - This 3-page document contains a chain of 9 emails, the first 8 dated February 7 and the ninth February 6, 2006. The first is from Green to Hammel-Smith, Abraham, and Katz, with copies to Austin and Pickrell, providing requested technical data and a suggested approach for analysis. The second is from Hammel-Smith to Abraham, Green and Katz, providing the author's understanding of the status of a request. The third is from Abraham to Green, Hammel-Smith, and Katz, providing direction and asking a staffing-related question. The fourth is from Green to Hammel-Smith and Katz, with a copy to Abraham, discussing the regulation of vehicles produced vs. sold by state. The fifth is from Hammel-Smith to Katz and Green, with a copy to Abraham, asking a question regarding the use of production vs. sales data for analysis. The sixth is from Thomas Cooper (NHTSA) to Hammel-Smith, transmitting a comment. The seventh is from Gregory Magno (NHTSA) to Cooper, with a copy to Abraham, providing an explanation of the attached data. The eighth is from Cooper to Magno asking a question. The ninth is from Abraham to Cooper, with a copy to Hammel-Smith, requesting assistance in obtaining technical data regarding car production and sales by state. The Court finds the document to be deliberative and pre-decisional and contains no reasonably segregable factual material.

**645-647** - This four-page document contains a chain of 11 emails, dated February 7, 2006. The emails are between Green, Pickrell, Hammel-Smith, Abraham, Katz, Thomas Cooper (NHTSA), and Gregory Magno (NHTSA). They contain requested technical data, recollections regarding data reported, a suggested approach for analysis, an author's understanding of the status of a request, provide direction and ask a staffing-related question, discuss the regulation of vehicles produced versus sold by state, asks a question

United States District Court

For the Northern District of California

regarding the use of production versus sales data for analysis, transmit a comment, provide an explanation regarding attached data, ask a question of Magno, and request assistance in obtaining technical data regarding car production and sales by state. Redacted portions are deliberative. No factual material.

**648-651** - This four-page document contains a chain of 13 emails, dated February 8, 2006. Redacted portions are deliberative. No factual material.

**652-655** - Document has handwritten note that says "released in entirety. See Ray Decl. Para. # 33."

**656-657** - This two-page document contains a chain of 7 emails, dated February 7, 2006. The emails are between Green, Hammel-Smith, Katz, Green, Thomas Cooper (NHTSA), and Gregory Magno (NHTSA). They provide direction and ask a staffing-related question, discuss the regulation of vehicles produced versus sold by state, ask a question regarding the use of production versus sales data for analysis, transmit a comment, provide an explanation regarding attached data, ask a question of Magno, and request assistance in obtaining technical data regarding car production and sales by state. The Court finds the document to be deliberative, pre-decisional, and contains no factual material.

**658-661** - This four-page document contains a chain of 14 emails, dated from February 6-8, 2006. The emails are between Abraham, Austin, Pickrell, Green, Hammel-Smith, Katz, Faigin, Thomas Cooper (NHTSA), and Gregory Magno (NHTSA). They concern reaction to data provided, address a request for additional information regarding car production and sales by state, ask for additional data, provide an explanation of technical data, provide a recollection regarding data reported, provide requested technical data and a suggested approach for analysis, an author's understanding of the status of a request, provide direction and ask a staffing-related question, discuss the regulation of vehicles produced versus sold by state, ask a question regarding use of production versus sales data for analysis, transmit a comment, provide an explanation regarding attached data, ask a question of Magno, and request assistance in obtaining technical data regarding car production and sales by state. The Court finds the redacted portions are deliberative and pre-decisional, and that there is no factual material.

**662 (2nd and 3rd emails only)** - This one-page document contains a chain of three emails, dated February 16, 2005. The second email, from Feather to Medford, and Theroux, transmits a draft document and provides an opinion regarding the draft. The third email, from Medford to Feather, Harrington, and Theroux, provides information and requests comments on a draft document. The Court finds the redacted portions are deliberative and pre-decisional and there is no factual material.

**663 (3rd and 4th emails only)** - This one-page document contains a chain of four emails, dated February 16, 2005. The third email, from Feather to Medford, Harrington, and Theroux, transmits a draft document and provides an opinion regarding the draft. Redacted portions are deliberative and pre-decisional. No factual material.

**664 (4th and 5th emails only) -** This one-page document contains a chain of five emails, dated February 16, 2005. The fourth email, from Feather to Medford, Harrington, and Theroux, transmits a draft document and provides an opinion regarding the draft. Redacted portions are deliberative and pre-decisional. No factual material.

**690 (2nd email only)** - This one-page document contains a chain of three emails, dated March 22, 2006. The second email, from Abraham to Kevin Green (VOLPE) and Hammel-Smith, provides direction regarding the pre-emption document. Redacted portions are deliberative and pre-decisional. No factual material.

**691-692 (4th email only)** - This two-page document contains a chain of five emails, dated March 22, 2006. The fourth email, from Abraham to Kevin Green (VOLPE) and Hammel-Smith, provides direction regarding the pre-emption document. Redacted portions are deliberative and pre-decisional. No factual material.

**698-700** - This three-page document contains a chain of five emails, dated March 27, 2006. The first email, from Knepper to Wood, discusses review and coordination of the draft. The second email, from Wood to Knepper, discusses the incorporation of comments into a proposed rule. The third email, from Knepper to Wood, also discusses the incorporation of comments into a proposed rule. The fourth email, from Wood to Douglas Letter (DOJ), Gregory Katsas (DOJ), Justin Smith (DOJ), Robert Loeb (DOJ), Robert Kopp (DOJ), and Knepper, discusses the review of DOJ comments. The fifth email, from Letter to Katsas,

**United States District Court**
For the Northern District of California

1  Smith, Loeb, Kopp, Knepper, and Wood, contains DOJ comments to the proposed rule. The
2  document is deliberative and pre-decisional and contains no purely factual material.

3      **719-720 (2nd, 3rd and 4th emails only)** - This two-page document contains a chain of
4  4 emails, dated November 16, 2005. The second email, from Harrington to Feather,
5  Medford, and Theroux, provides instruction and guidance regarding the CAFE pre-emption
6  document. The third email, from Feather to Medford, Harrington, and Theroux, provides
7  feedback and one of many versions of a slide show. The fourth email, from Medford to
8  Feather, Harrington, and Theroux, provides guidance and a proposed draft of briefing
9  materials. Redacted portions are deliberative and pre-decisional. No factual material.

10     **721-722 (2nd email)** - This 2-page document consists of two emails and an
11 attachment. The second email, dated November 16, 2005, from Medford to Peter Feather
12 (NHTSA), Michael Harrington (NHTSA), and Richard Theroux (NHTSA), discusses review of
13 the attachment. Redacted portions and draft copy are deliberative and pre-decisional. No
14 purely factual material.

15     **723-724 (2nd email)** - This two-page document consists of 2 emails, dated November
16 16, 2005. The second email, from Medford to Peter Feather (NHTSA), Michael Harrington
17 (NHTSA), and Richard Theroux (NHTSA), discusses review of the attachment document.
18 Redacted portions and draft copy are deliberative and pre-decisional. No purely factual
19 material.

20     **791-795 (attachment)** - This 5-page document consists of 2 emails and an
21 attachment. The attachment is a 4-page draft, entitled, "Pre-emption Chronology." Redacted
22 portions of emails and attachment are deliberative and pre-decisional. No purely factual
23 material.

24     **810- 847 -** This document is a 38-page draft paper entitled, "Pre-emption." The paper
25 discusses public comments, CAFE statute pre-emption, and chronology. The Court finds it
26 hard to tell what is withheld here - redactions or the whole thing. Regardless, the Court finds
27 that, because this is a draft document, it is presumptively subject to exemption 5 of FOIA
28 and should not be disclosed. *Exxon Corp. v. Department of Energy*, 585 F. Supp. 690.

**851-852** - This two-page document contains a chain of 3 emails, dated August 4, 2006. The first email was released. The second email, from Julie Abraham (NHTSA) to Kevin Green (VOLPE), Guerci, Carol Hammel-Smith (NHTSA), and Steve Wood (NHTSA attorney), asking for feedback and offering assistance. Document is deliberative and pre-decisional. No factual material.

**857-862 (attachment)** - This 6-page document contains 2 emails, dated April 4, 2006, and an attachment. The attachment contains five pages of charts regarding sensitivity analysis of truck standards. Redacted portion of email and analytical draft document are deliberative and pre-decisional. No purely factual material.

**870-874 (attachment)** - 870 is a transmittal email and may be released. The log at 871-874 appears to have been previously filed publicly in a lawsuit and any protection is therefore waived and it should be released.

**892-903 (4th and 7th emails)** - This 12-page document contains a chain of 7 emails dated August 4, 2006, and an attachment. The 4th email, from Abraham to Green, provides direction and a schedule regarding EPA data. The seventh email, from Karl Simon (EPA) to Abraham, provides follow-up information to a conversation between Simon and Abraham regarding fuel specification questions. The redacted portions of the emails and the draft document are deliberative and pre-decisional. No purely factual material.

**1028-1029; (attachment)** - This 2-page document consists of two emails and an attachment. The untitled attachment contains a draft discussion of combustion, and comments by some but not all parties to the emails. The redacted portions of the emails and the draft document are deliberative and pre-decisional. There is no factual material.

**1031-1032** - Defendants contend that this document is outside the time frame of Plaintiff's FOIA request.

**1033-1054** - This 22-page document is a draft entitled, "Pre-emption of State Laws Related to Average Fuel Economy Standards." The redacted comments and the draft document are deliberative and pre-decisional. Factual material is not reasonably segregable from deliberative content.

**1057-1060 (attachment)** - This 4-page document is a chain of 3 emails. The attachment is a two-page draft document regarding combustion. Redacted comments and draft document are deliberative and pre-decisional. Factual material is not reasonably segregable.

**1129-1137 (attachment)** - This 10-page document contains a chain of 4 emails and an attachment. The attachment is a 7-page draft memorandum from Hammel-Smith to Abraham, on the subject, "California Greenhouse Gas Program Issues." The redacted email comments, the draft document and the memorandum are deliberative and pre-decisional. The memorandum is privileged attorney-client communication. Factual material is not reasonably segregable.

**1168-1175 (attachment)** - 1168 is a transmittal email and should be released. 1169-1175, a memorandum on California Greenhouse Gas Program Issue, is deliberative and pre-decisional. Factual material is not reasonably segregable.

**1176-1183 (attachment)** - Document is an email and the same memorandum as at 1169-1175. Same findings.

**1206 (2nd email only) -** This one-page document is a string of four emails, from February 6 - 8, 2006. The first, third, and fourth emails were released by the agency. The second email is from Kevin Green of VOLPE to Julie Abraham. The email provides a proposed outline and the rationale for the outline. The Court finds the withheld portion of this document to be deliberative and pre-decisional and to contain no reasonably segregable factual material.

**1252-1253 -** This two-page document is a string of three emails, dated January 12, 2006. The first email is from Gregory Ayres of VOLPE to Carol Hammel-Smith discussing comments by VOLPE to the CO2 memo. The second email is from Hammel-Smith to Ayres, with a copy to Kevin Green of VOLPE, inquiring about the status of research being done by VOLPE. The third email is from Ayres to Hammel-Smith, with a copy to Green, providing comments to a draft memorandum regarding CO2 vehicle emissions. The Court finds this

1    document to be deliberative and pre-decisional and to contain no reasonably segregable

2    factual material.

3        **1255-1257 -** This three-page document is a string of 4 emails, dated January 12,

4    2006. The first email is from Ayres to Hammel-Smith, with a copy to Kevin Green, providing

5    clarification to a previous comment. The second email is from Ayres to Hammel-Smith,

6    discussing comments to the $CO_2$ memo by VOLPE. The third email is from Hammel-Smith

7    to Ayres, with a copy to Green, inquiring about the status of research being done by VOLPE.

8    The fourth email is from Ayres to Hammel-Smith, with a copy to Green,  providing comment

9    to a draft memorandum regarding $CO_2$ vehicle emissions. The Court finds the document to

10   be deliberative and pre-decisional and to contain no reasonably segregable factual material.

11       **1269-1270 (1st, 2nd and 3rd emails only)** - This 2-page document contains a chain of

12   5 emails, dated February 2, 2006. The first email, from Green to Hammel-Smith advises on

13   interpreting technical data. The second email, from Hammel-Smith to Green, with copies to

14   Ken Katz and Julie Abraham, both of NHTSA, discusses technical data. The third email,

15   from Green to Hammel-Smith, provides technical data. Redacted portions are deliberative.

16   Factual material is not reasonably segregable.

17       **1274-1315 (1st through 8th emails and attachment)** - This 42-page document, dated

18   March 219, 2006, contains a chain of 12 emails. The first through eighth emails are between

19   Kevin Green (VOLPE) and Hammel-Smith. The first email was released. The second

20   through eight emails concern discussions and comments regarding a pre-emption draft, a

21   technical question rased by Lloyd Guerci (NHTSA attorney), comments on later drafts of the

22   document and the correspondents' understanding of its status, inquiries about progress on

23   the draft, offers of assistance, and a citation to the sensitivity of the information. Redacted

24   portions of emails and the draft Appendix on Preemption are deliberative and pre-decisional.

25   Factual material is not reasonably segregable.

26       **1340-1345** - This 6-page document, dated January 5, 2006, is a draft paper entitled,

27   "Technical Issues Related to CAFE Pre-emption." It is marked "Draft Not for Public

28   Dissimination." [sic] The Court finds this document to be deliberative, pre-decisional and to

contain no reasonably segregable factual material.

**1346-1347 (1st, 2nd and 3rd emails only)** - This 2-page document contains a chain of 4 emails, all dated January 5, 2006. The first email is from Green to Hammel-Smith, providing a suggestion regarding technical research. The second email is from Hammel-Smith to Julie Abraham (NHTSA), with copies to Peter Feather (NHTSA), Ken Katz (NHTSA), and Green, responding to the previous email regarding next step. The third email is from Abraham to Hammel-Smith, with copies to Feather, Katz, and Green, providing direction and guidance for revising the draft on technical issues related to CAFE pre-emption. The Court finds the withheld portion of this document to be deliberative, pre-decisional, and to contain no reasonably segregable factual material.

**1381 (2nd email only)** - This 1-page document contains a chain of 3 emails. The 2nd email is from Karl Simon (EPA) to Abraham, providing clarification regarding EPA technical certification data. The Court finds the withheld portion of this document to be deliberative, pre-decisional and to contain no reasonably segregable factual material.

**1383 (2nd email only)** - This 1-page document consists of 2 emails, dated February 22, 2006. The second email, from Karl Simon (EPA) to Abraham, provides answers to DOT questions regarding fuel specifications. The redacted portion of the document is deliberative. Factual material is reasonably segregable and should be released.

**1388 (3rd email only)** - This one-page document consists of 3 emails. The third email, dated August 4, 2006, from Karl Simon (EPA) to Abraham, discusses technical data by EPA and necessary inter-agency assistance. Redacted portion of email is deliberative and pre-decisional. No factual material.

**1393-1397 -** Document says "previously released see 11/30/07 Ray Decl. Para. # 44."

**1404-1412 (attachment)** - Document is an email and the same memorandum as at 1169-1175, and 1176-1183. Same findings.

**1424 (3rd email only)** - This 1-page document contains a chain of 4 emails. The 3rd email, dated February 16, 2006, is from Karl Simon (EPA) to Abraham, providing a tentative explanation and guidance regarding certification data. The Court finds that the redacted

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

portions are deliberative, pre-decisional and contain no reasonably segregable factual material.

**1432-1436 (2nd email)** - The second email, from Carol Hammel-Smith to Julie Abraham and Harrington, transmits the attachment. The Court finds that the second email, which has been withheld, is deliberative, pre-decisional and contains no reasonably segregable factual material. The first email and the attachment have been released in their entirety.

**1456-1465** - (same as 1506-1515) This undated 10-page document is a paper titled, "Combustion Principles." This draft paper was prepared by NHTSA. The Court finds that the unredacted portions of this document consist of reasonably segregable factual material, which is not subject to exemption 5, and should be released.

**1484 (4th and 5th emails)** - This 1-page document contains a chain of 5 emails. The fourth email, dated March 28, 2006, is from Elizabeth Branch, of OMB, to Harrington, and discusses the time frame of a section of talking points on the draft CAFE final rule. The fifth email, from Harrington to Branch, according to the *Vaughn* Index discusses talking points on the draft CAFE final rule and requests comments. The Court finds that in fact this is a transmission document. Although it reveals who participated in the discussion, it provides nothing more substantive than the *Vaughn* Index, and is therefore not subject to exemption 5, and should be released.

**1506-1515** - (same as 1456-1465) This undated 10-page document is a paper titled, "Combustion Principles." This draft paper was prepared by NHTSA. The Court finds that the unredacted portions of this document consist of reasonably segregable factual material, which is not subject to exemption 5 and should be released.

**1564-1584 -** Defendants contend that these documents are outside the time frame of Plaintiff's FOIA request.

**1614-1615** - Defendants contend that these documents are outside the time frame of Plaintiff's FOIA request.

**1616-1619** - This 4-page undated document is a marked-up draft entitled, "U.S. Automakers and Advanced Vehicles." It is marked "DRAFT Pre-decisional 5/10/06." The

1  Court finds this document to be deliberative, pre-decisional and to contain no reasonably

2  segregable factual material.

3

4      **1620** - This 1-page undated chart is a draft with handwritten comments titled, "Gas

5  Price Worksheet." The Court finds this document to be deliberative, pre-decisional and to

6  contain no reasonably segregable factual material.

7      **1621-1623** - This 3-page undated document contains a 1-page draft titled, "Talking

8  Points - CAFE," and 2 pages of charts that support the talking points. The Court finds the

9  document to be deliberative, pre-decisional and to contain no reasonably segregable factual

10  material.

11      **1624-1635 -** Defendants contend these documents are outside the time frame of

12  Plaintiff's FOIA request.

13      **1636-1656** -   Defendants contend these documents are outside the time frame of

14  Plaintiff's FOIA request.

15      **1657-1667 -** This 11-page document dated October 21, 2005, consists of a 3-page

16  summary entitled, "Authority to Amend the Corporate Average Fuel Economy Standard for

17  Passenger Automobiles," with an 8-page interpretation as an attachment. The Court finds

18  the document to be deliberative, pre-decisional and to contain no reasonably segregable

19  factual material.

20      **1668-1915 -** This is a compilation of documents and the Index listing them and

21  describing their applicability to the CAFE rule-making process. The Index is at Page 1668.

22  This Court finds that the Index reveals the manner in which the agency approached the

23  deliberative process. However, the documents themselves do not reveal the agency's

24  decision-making process. Nor are they "inextricably intertwined" with deliberative material.

25  Consequently, Documents at 1669-1915 are not subject to exemption 5, and should be

26  released.

27      **2001-2002-** This is an undated draft, the first page entitled" Reform CAFE Talking

28  Points, the second page entitled "CAFE Talking Points." The Court finds it is deliberative

and pre-decisional and contains no reasonably segregable factual material.

1

2       **2003-2005-** This 3-page document is an undated marked-up draft titled: "Pre-

3   emption: Request for Comments." The Court finds the document to be deliberative and pre-

4   decisional and to contain no reasonably segregable factual material.

5       **2010-2015 -** This 6-page undated draft is related to CAFE and was not shared

6   outside the government. The Court finds this document to be deliberative and pre-decisional

7   and to contain no reasonably segregable factual material.

8                       **Summary of Report and Recommendation**

9       This Court finds that Defendants have properly withheld from disclosure all

10  documents under exemption 5 of FOIA as discussed above, except as found by this Court

11  and listed below[1], and that the district court should therefore grant summary judgment in

12  part for Defendants and deny summary judgment for Plaintiff as to these documents.

13      This Court finds that Defendants have improperly withheld from disclosure under

14  exemption 5 of FOIA  the following documents or portions of documents for the reasons

15  given, and that the district court should deny summary judgment in part for Defendants and

16  grant summary judgment in part for Plaintiff as to these documents. The Court assumes that

17  documents marked "previously related" have been disclosed to Plaintiff. The Court makes

18  no findings or recommendations as to these documents.

19                       **Conclusion re NHTSA Documents**

20                        **Which Should be Disclosed**

21      **Document 41 (p. 27, supra)** - In the *Vaughn* Index, the agency states that in this

22  email, dated 3/27/06, John Knepper, an attorney with OMB Office of General Counsel,

23  provides to EPA and OMB staff his perspectives and opinions in response to an inquiry from

24  EPA regarding the status of revisions to the NHTSA light truck CAFE rule and provides a

25  copy for EPA review. The Court reviewed the document and concludes that it does not

26  contain either deliberative or factual material and is merely a transmittal, and therefore not

27  exempt from disclosure.

28  _____

           [1]The Court's reasoning with respect to the documents to be disclosed is reiterated in
    the conclusion.

**284-285 (5th email and attachment only) (pg 39, supra)**- This is a chain of 5 email messages from February 12-15, 2006. The email at issue is from Carol Hammel-Smith of NHTSA to Julie Abraham and Steve Wood, NHTSA attorney. The email transmits a revised discussion concerning California greenhouse gas program issues. The agency contends the document also contains attorney-client communications. The 5th email is merely a transmittal email, and the Court finds that it does not contain any material which would qualify it for exemption from disclosure pursuant to exemption 5 of FOIA.

**433-434 (p. 42, supra)** - BOTH PAGES ARE MARKED "PREVIOUSLY RELEASED." This 2-page document contains an email and an attachment. The email, dated February 17, 2006, is from Simon to Abraham, with copies to Dickinson, Burnett, and Alson, providing an explanation of and the basis for the data provided in the attachment and proposed other action items. The 1-page attachment deals with the relationship between HC, CO, Nox and mpg, and contains summary data generated in response to an inter-agency deliberative discussion.

**435-437 (p. 42, supra)** - ALL PAGES ARE MARKED "PREVIOUSLY RELEASED." This 3-page document contains an email and an attachment. The email, dated February 21, 2006, from Simon to Abraham, with a copy to Dickinson, transmits the background information in the attachment and discusses related comments. The two-page attachment deals with the relationship between HC, CO, Nox, and mpg and contains summary data generated in response to an inter-agency deliberative discussion.

**456-458 (p. 44)** - ALL PAGES ARE MARKED "PREVIOUSLY RELEASED."

**459-461 (p. 44) (2nd email and attachment)** - PAGES 460 AND 461 ARE MARKED "PREVIOUSLY RELEASED." Page 459 is two emails, both dated February 21, 2006. The first, from Abraham to Guerci, Wood, Hammel-Smith, and Green, and was released in its entirety. The second, from Simon to Abraham, with a copy to Dickinson, transmits the background information in the attachment and discusses related comments. The Court finds the second email to be deliberative and pre-decisional and to contain no reasonably segregable factual material.

**United States District Court**
For the Northern District of California

1   **465-466 (attachment)(p.44)**  - BOTH PAGES ARE MARKED "PREVIOUSLY

2   RELEASED"

3   **467-468 (p. 44)** - BOTH PAGES ARE MARKED "PREVIOUSLY RELEASED"

4   **641 (1st email only)(p.47)** - This 1-page document contains a chain of 3 emails. The

5   first email, dated February 2, 2006, is from Green to Hammel-Smith, with copies to Katz and

6   Abraham, providing requested technical data. The Court finds the technical data to be purely

7   factual and to be reasonably segregable, and this should be produced.

8   **652-655 (p. 49)** - Document has handwritten note that says "released in entirety. See

9   Ray Decl. Para. # 33."

10  **870-874 (attachment)(p. 52)** - 870 is a transmittal email and may be released. The

11  log at 871-874 appears to have been previously publicly filed in a lawsuit and any protection

12  is therefore waived and it should be released.

13  **1168-1175 (attachment)(p.53)** - 1168 is a transmittal email and should be released.

14  **1383 (2nd email only)(p.55)** - This 1-page document consists of 2 emails, dated

15  February 22, 2006. The second email, from Karl Simon (EPA) to Abraham, provides

16  answers to DOT questions regarding fuel specifications. Redacted portion of document is

17  deliberative. Factual material is reasonably segregable and should be released.

18  **1393-1397 (p.55)** - Document says "previously released see 11/30/07 Ray Decl.

19  Para. # 44."

20  **1456-1465 (p. 56)** - (same as 1506-1515) This undated 10-page document is a paper

21  titled, "Combustion Principles." This draft paper was prepared by NHTSA. The Court finds

22  that the unredacted portions of this document consist of reasonably segregable factual

23  material, which is not subject to exemption 5, and should be released.

24  **1484 (4th and 5th emails)(p.56)** - This 1-page document contains a chain of 5 emails.

25  The fourth email, dated March 28, 2006, is from Elizabeth Branch, of OMB, to Harrington,

26  and discusses the time frame of a section of talking points on the draft CAFE final rule. The

27  fifth email, from Harrington to Branch, according to the *Vaughn* Index discusses talking

28  points on the draft CAFE final rule and requests comments. The Court finds that in fact this

is a transmission document. Although it reveals who participated in the discussion, it

United States District Court

For the Northern District of California

provides nothing more substantive than the *Vaughn* Index, and is therefore not subject to exemption 5, and should be released.

**1506-1515 (p.56)** - (same as 1456-1465) This undated 10-page document is a paper titled, "Combustion Principles." This draft paper was prepared by NHTSA. The Court finds that the unredacted portions of this document consist of reasonably segregable factual material, which is not subject to exemption 5 and should be released.

**1668-1915 (p.57) -** This is a compilation of documents and the Index listing them and describing their applicability to the CAFE rule-making process. The Index is at Page 1668. This Court finds that the Index reveals the manner in which the agency approached the deliberative process. However, the documents themselves do not reveal the agency's decision-making process. Nor are they "inextricably intertwined" with deliberative material. Consequently, Documents at 1669-1915 are not subject to exemption 5, and should be released.

### Additional Documents

Defendants during the course of the Court's *in camera* review raised an objection as to certain documents that they assert are outside the time frame of Plaintiff's FOIA request.

The documents are:

**1031-1032 (p.52)** - This is a status report dated August 4, 2006. Defendants contend that this document is outside the time frame of Plaintiff's FOIA request. Defendants conceded that "a small portion's within the scope of the request," but Defendants assert that the document is deliberative and pre-decisional and therefore subject to exemption 5 of FOIA. (Ray Decl., ¶ 57.)

**1614-1615 (p.56)** - This is a two-page, marked-up internal draft document dated May 10, 2006, entitled "Corporate Average Fuel Economy (CAFE) Final Proposal." It is marked "Draft Pre-Decisional 5/10/2006." Defendants contend that this document is outside the time frame of Plaintiff's FOIA request, and also that the document is deliberative, pre-decisional and subject to exemption 5 of FOIA.  (Ray Decl., ¶ 59.)

**United States District Court**
For the Northern District of California

**1624-1635 (p.57)** - This is a 12-page briefing document entitled, "Auto Industry, Deputies Meetings," dated May 11, 2006. Defendants contend this document is outside the time frame of Plaintiff's FOIA request, deliberative, pre-decisional and subject to exemption 5 of FOIA. (Ray Decl., ¶ 60.)

**1636-1656 (p.57)** -   This 21-page document, dated May 11, 2006, is a briefing entitled, "Auto Industry, Deputies Meeting." Defendants contend this document is outside the time frame of Plaintiff's FOIA request, that the audience for the briefing was internal to the Federal Government, and that the document is deliberative, pre-decisional and subject to exemption 5 of FOIA. (Id.)

In its FOIA request, Plaintiff requested disclosure of records related to (1) "the discussion of state regulations, and/or specifically the State of California's regulation, of, motor vehicle carbon dioxide emissions found in 'Section XIV.D.Pre-emption,' published in the Federal Register on April 6, 2006, at Volume 71, pages 17654-17670"; (2) certain meetings and phone conversations with NHTSA regarding the above-referenced regulation; and (3) meetings, conferences, and discussions with the President regarding state regulation of motor vehicle carbon dioxide emissions and/or pre-emption of such regulations." (Complaint at 3, ¶ 9)

The parties did not argue the time frame issue in their cross-motions for summary judgment. Nor did either party bring it up in their letter briefs. Defendants appear to be interpreting Plaintiff's request as limited to documents created before the proposed final rule was published in the Federal Register in April 2006. This is not the plain language of the request, which asks for documents related to this regulation. In fact, documents created after publication of the proposed final rule are not subject to exemption 5 of FOIA because by their timing they cannot possibly be pre-decisional, since they were created after the proposed final rule was published. The deliberative process privilege, sometimes known as the executive privilege, protects documents that are *both* pre-decisional and deliberative in nature, prepared to assist an agency board or official in arriving at a decision.

United States District Court

For the Northern District of California

*Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168 (1975); *Dow, Lohnes & Albertson v. Presidential Com'n on Broadcasting to Cuba*, 624 F. Supp. 572 (D.D.C. 1984). Of necessity, then, any documents prepared after the proposed final rule was published cannot have been used to assist an agency official in arriving at a decision.

On the other hand, these documents, judging from their descriptions by the agency in the *Vaughn* Index, may very well be related to the regulation, as Plaintiff requests. Consequently, Defendants' objection that these documents are outside the scope of Plaintiff's FOIA request is invalid and the documents of necessity cannot be subject to exemption 5, since they are post-decisional. This Court recommends that these documents be released.

**Conclusion and Recommendation**

For all the reasons discussed above, this Court recommends to the district court that the parties' cross-motions for summary judgment be granted in part and denied in part.

Respectfully submitted,

DATED: December 22, 2008

_____
JAMES LARSON
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIV-REF\07-2055\Supp. R&R-final_final.wpd